942 F.2d 130
 20 Fed.R.Serv.3d 995, 19 Media L. Rep. 1172
 CITY OF HARTFORD, Plaintiff-Appellant,
v.
David T. CHASE; Chase Family Partnership; One Corporate
Center, Inc.; Chase Family Limited Partnership No. 3; One
Commercial Plaza, Inc.; David T. Chase Enterprises, Inc.;
Chase Enterprises, Inc.; Olympia & York Hartford, Inc.; O
& Y (U.S.) Development Company, L.P.; L.N. Bofox Real
Estate Development Corp.; O & Y (U.S.) Development General
Partner Corp.; Cavanagh, Fritz & Company; Interstate
Management Corporation; Interstate Management Associates;
and Peat Marwick Main & Co., Defendants-Appellants,
William J. Keveney, III and the Hartford Courant,
Intervenors-Appellees.
 No. 1394, Docket 91-7074.
 United States Court of Appeals,
Second Circuit.
 Argued June 5, 1991.
Decided Aug. 14, 1991.
 
 Charles L. Howard, Hartford, Conn. (Shipman & Goodwin, of counsel), for plaintiff-appellant City of Hartford.
 Stuart Bear, Bridgeport, Conn. (Jacob D. Zeldes, Zeldes, Needle & Cooper, of counsel), for defendants-appellants David T. Chase; Chase Family Partnership, One Corporate Center, Inc., Chase Family Ltd. Partnership No. 3, One Commercial Plaza, Inc., David T. Chase Enterprises, Inc., Chase Enterprises, Inc., Cavanagh, Fritz & Co., Interstate Management Corp., Interstate Management Associates.
 (Stanley D. Robinson, Kaye, Scholer, Fierman, Hayes & Handler, New York City, of counsel), for defendants-appellants Olympia & York Hartford, Inc., O & Y (U.S.) Development Co., L.P., L.N. Bofox Real Estate Development Corp., O & Y (U.S.) Development General Partner Corp.
 (Eric W. Wiechmann, Cummings & Lockwood, of counsel, Hartford, Conn.), for defendant-appellant Peat Marwick Main & Co.
 Ralph G. Elliot, Hartford, Conn. (Tyler, Cooper & Alcorn, of counsel), for intervenors-appellees William J. Keveney, III and The Hartford Courant.
 Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 The City of Hartford and David T. Chase, et al., appeal from an order of the United States District Court for the District of Connecticut, Peter C. Dorsey, Judge, interpreting, and--as will be discussed below--modifying, a prior order he had issued formalizing the settlement of a lawsuit between appellants. For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings.
 
 BACKGROUND
 
 2
 This appeal stems from arrangements between the City of Hartford (the "City") and a number of developers (the "Developers"), related to the construction, operation and financing of two commercial office buildings in downtown Hartford. The arrangements involved materials the parties regarded as highly confidential, and, as a result, the parties entered into an agreement (the "Confidentiality Agreement") that required the City to keep confidential all proprietary materials provided by the Developers.
 
 
 3
 After the arrangements were settled, a dispute arose between the City and the Developers, and, on April 11, 1989, the City filed suit. Pursuant to the City's request, the district court agreed to keep the pleadings under seal "pending further order of the Court." In an effort to assure the continued confidentiality of its materials, the Developers initiated settlement discussions with the City. After arriving at a conditional settlement, the parties informed the court that final resolution of the dispute was conditioned upon the court's entry of an order assuring that the contents of the settlement would remain confidential.
 
 
 4
 On September 29, 1989, the court filed an order adopting the parties' stipulated settlement. That order contained specific proscriptions against disclosure of the court file, as well as of "any document, information or discussion relating to the Settlement Agreement which have [sic] taken place and will take place" (the "Confidentiality Order").[1] Under the terms of the settlement agreement, the court's entry of the Confidentiality Order served to nullify the provisions of the original Confidentiality Agreement. After the settlement was concluded, the parties entered into amended and restated leases relating to the two commercial office buildings.
 
 
 5
 On October 31, 1989, the Hartford Courant and its reporter William J. Keveney, III (the "Intervenors") moved to intervene and to vacate the Confidentiality Order. While their motion was pending, they also instituted proceedings before the Connecticut Freedom of Information Commission ("FOIC") to compel the City, pursuant to the Connecticut Freedom of Information Act ("FOIA"), to disclose materials in its possession related to the lawsuit.
 
 
 6
 On March 30, 1990, Judge Dorsey granted the Intervenors' motion to intervene, but denied their request to vacate the Confidentiality Order 733 F.Supp. 533. First, he concluded that the Confidentiality Order was not improvidently granted. Second, he found that the Intervenors might be able to compel disclosure from the City under the FOIA, thus avoiding the necessity of vacating the Confidentiality Order.
 
 
 7
 On April 6, 1990, Intervenors moved for reconsideration of the March 30 ruling. In their motion, they suggested that the FOIC proceedings could not provide them with full relief, as the Confidentiality Order would provide the City with a defense to disclosure of the materials. On July 6, 1990, Judge Dorsey issued another opinion, which reiterated his view that the Confidentiality Order did not preclude the FOIC from ordering the City to disclose materials in its possession related to the lawsuit, but rather precluded only an order requiring disclosure of the court file. The original parties to the lawsuit then moved for reconsideration, arguing that the Confidentiality Agreement was an absolute bar to disclosure under the FOIC, and that the court's March 30 and July 6 statements to the contrary were not supported by the terms of the Confidentiality Order. On January 9, 1991, the court issued its final opinion on this matter, stating once again that the FOIC could compel the City to disclose confidential materials in its possession regardless of the provisions of the Confidentiality Order. The original parties now appeal.
 
 DISCUSSION
 1. Appealability
 
 8
 Before reaching the merits, we pause to address two threshold questions of appealability. The first concerns Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires parties to a civil case to file their notice of appeal no more than thirty days after the date of entry of the lower court's order. Here, appellants did not file their notice of appeal until January 18, 1991, more than thirty days after Judge Dorsey entered his orders of March 30 and July 6, 1990. Thus, at the outset, we must determine whether we have jurisdiction to consider the March 30 and July 6 rulings on this appeal, or whether we are limited to entertaining the appeal from the ruling of January 9.
 
 
 9
 The answer to this question, we believe, lies in Rule 4(a)(4), which provides that "[i]f a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 [concerning motions for amendment of judgments] ..., the time for appeal for all parties shall run from the entry of the order ... granting or denying [the Rule 59 motion]." Here, the motion for reconsideration filed by Intervenors (resulting in the July 6 order), as well as the motion filed by appellants (resulting in the January 9 order), were not explicitly premised on Rule 59, but rather were based on Rule 9(e) of the local rules of the District of Connecticut. Motions for reconsideration under local rule 9(e), however, are as a practical matter the same thing as motions for amendment of judgment under Fed.R.Civ.P. 59(e)--each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance. As such, for purposes of Rule 4(a)(4), we believe that a motion under local rule 9(e) must be treated the same as a motion under Rule 59. See C. Wright, A. Miller, E. Cooper & E. Gressman, 16 Federal Practice and Procedure § 3950, at 364 n. 7 (1977) ("Any kind of motion that draws into question the correctness of the district court judgment is considered to be a motion 'to alter or amend the judgment' under Civil Rule 59(e). Such a motion may variously be styled a motion to reconsider, a motion for rehearing, a motion to reargue, a motion to vacate, or a motion to set aside the judgment."); cf. Fischer v. United States Dep't of Justice, 759 F.2d 461, 464 (5th Cir.1985) (per curiam) (finding that, because the appellant's motion under Rule 60(b) "call[ed] into question the correctness of the underlying judgment," it should be treated as a motion under Rule 59(e) for purposes of calculating the timeliness of the appeal). But the motion in this case was itself technically not timely, since it was filed 21 days after the entry of judgment, and not within the 10-day period as required by Rule 9(e)(1). Nevertheless, because the district court entertained the motion and ruled on its merits, "the time for appeal may begin to run anew from the date on which the court disposed of the untimely application." See F.T.C. v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 210, 73 S.Ct. 245, 248, 97 L.Ed. 245 (1952). Accordingly, the time for appeal in the present case did not begin running until January 9, 1991, when the last motion to reconsider was denied. The appeals from all three orders are therefore timely.
 
 
 10
 The timeliness of the present appeals is but one of the jurisdictional problems with which we are confronted, however. A more fundamental question remains as to whether the language about which appellants are upset--specifically, the language indicating that the original Confidentiality Order would not provide a defense to a FOIC request for documents in the City's possession--is appealable in the first instance. After all, might not that language simply constitute dicta, expressing Judge Dorsey's views on what might happen if the FOIC attempts to order the City to disclose the documents, and the City then attempts to cite the Confidentiality Order as a defense?
 
 
 11
 Although this is concededly a close case, we believe that the language being appealed from is not mere dicta. Judge Dorsey did more than simply express off-the-cuff observations about the possible applicability of the original Confidentiality Order to a hypothetical FOIC proceeding that might someday be brought. Rather, as discussed below, he took clear-cut provisions of the Confidentiality Order--which, we believe, explicitly protect all documents in the City's possession from disclosure--and rewrote those provisions to cover only the court file. In so doing, he directly affected the outcome of the ongoing FOIC proceeding, by effectively eliminating the possibility that the FOIC would accept the City's reliance on the Confidentiality Order as a defense to discovery of the documents. Thus, his actions went beyond an expression of personal opinion and amounted to a modification of the Confidentiality Order as originally written. Accordingly, because the Confidentiality Order granted injunctive relief, and the three later orders modified that injunction, an appeal from the later orders is permissible under 28 U.S.C. § 1292(a)(1), which allows appeals as of right from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." See Carson v. American Brands, Inc., 450 U.S. 79, 83-84, 101 S.Ct. 993, 996-997, 67 L.Ed.2d 59 (1981).
 
 
 12
 Accordingly, we turn now to the merits of appellants' claims.
 
 2. The Meaning of the Confidentiality Order
 
 13
 Our first task is to determine what the Confidentiality Order means. Appellants argue that the Confidentiality Order precludes disclosure of all documents related to the settlement, whether or not those documents are contained in the court file. The district court, by contrast, concluded that the Order assures confidentiality only to the court file itself. Based on the plain language of the Confidentiality Order, we believe appellants' interpretation is correct.
 
 
 14
 Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law. See United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Thus, "deference is to be paid to the plain meaning of the language ... and the normal usage of the terms selected." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir.1985). Under this standard, then, neither Appellants' nor the court's current interpretation of the Confidentiality Order is dispositive; rather, it is the plain meaning of the words--which, after all, is what the parties relied on in entering the settlement agreement--that controls.
 
 
 15
 The district court's interpretation of the Confidentiality Order simply cannot be reconciled with the plain meaning of the document. Paragraph Two of the Confidentiality Order specifically precludes disclosure by any of the original parties of "any document" related to the settlement. Even read in isolation, this Paragraph cannot plausibly be construed to bar disclosure only of the court file. When viewed in light of Paragraph One, however, which already precludes disclosure of the court file, an interpretation of Paragraph Two as embracing only the court file would render that paragraph superfluous, and would therefore conflict with "the presumption that parties to a contract intend every clause to have some effect." Chapman v. Orange Rice Milling Co., 747 F.2d 981, 983 (5th Cir.1984).
 
 
 16
 The district court's interpretation of the Confidentiality Order would also make that order meaningless. If the City has in its possession all the documents that are contained in the court file, and documents in the City's possession are not protected from disclosure, sealing the court file would serve no purpose--the contested material could be obtained simply by requesting it from the City itself. We find it hard to believe that the parties would have gone to such great efforts to draft an order with no practical effect.
 
 
 17
 Intervenors suggest that, if the district court's interpretation of the Confidentiality Agreement conflicts with the plain meaning of the document, the agreement must be rescinded because there was no "meeting of the minds." However, rescission is not appropriate here because neither of the parties to the agreement--the City and the developers--want it rescinded. Moreover, according to general principles of contract law, rescission based on a mistaken understanding of the terms of an agreement is available only where the mistake is mutual, or where one party's mistake has been caused by the other party's fraud. See Restatement (2d) of Contracts §§ 152, 153 (1981). Here, the most that can be said is that the court approved an agreement without fully appreciating the implications of what it was doing. Lack of foresight, however, does not render an agreement invalid. See Investors Ins. Co. v. Dorinco Reinsurance Co., 917 F.2d 100, 105 (2d Cir.1990) (denying reformation where evidence established only that one party "may have been mistaken as to the meaning of the clause"). Accordingly, regardless of what the district court had in mind at the time it signed the Confidentiality Order, we believe that, for purposes of the present controversy, the Order must be interpreted as it plain language dictates--i.e., to prohibit disclosure of all documents related to the settlement agreement.
 
 
 18
 3. The Validity of the Confidentiality Order
 
 
 19
 Intervenors next argue that, if the Confidentiality Order is interpreted to prevent access to all documents related to the settlement, whether or not those documents are contained in the court file, the Order would be an invalid exercise of federal judicial power. However, our past cases make clear that a federal judge has the power to prevent access to settlement negotiations when necessary to encourage the amicable resolution of disputes, see Palmieri v. State of New York, 779 F.2d 861, 864-65 (2d Cir.1985), and that a federal court's power to seal documents takes precedence over FOIA rules that would otherwise allow those documents to be disclosed, see FDIC v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir.1982). As such, Intervenors claim is without merit.
 
 
 20
 To be sure, sealing official documents should not be done without a compelling reason, and interested parties should be given an opportunity to challenge the propriety of a sealing order before the decision to seal is final. Here, however, Intervenors are unable to demonstrate that either of these principles was violated. First, as Judge Dorsey himself recognized at the time of entering the Confidentiality Order, a judicial assurance of confidentiality was a prerequisite to the parties' decision to settle their dispute. Thus, although we are somewhat disturbed by the sweeping language that the Confidentiality Order contains, our holding in Palmieri precludes us from finding that the original decision to seal the settlement talks was improper here. Second, the record indicates that Intervenors were aware of the pendency of the underlying litigation as early as April 1989-- before the Confidentiality Order was entered. Thus, they had an opportunity to challenge the Confidentiality Order before it was adopted, and cannot now complain that their interests were not taken into account at that time. We do not, of course, by this decision, in any way mean to give parties carte blanche either to seal documents related to a settlement agreement or to withhold documents they deem so "related." Rather, the trial court--not the parties themselves--should scrutinize every such agreement involving the sealing of court papers and what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed. We have previously referred in the context of agreements calling for entry of consent or settlement judgments to the "larger role" of the court in the resolution of "class actions, shareholder derivative suits, bankruptcy claims, antitrust suits brought by the United States ... and any suits 'affecting the public interest.' " Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir.1986) (citing Adams v. Bell, 711 F.2d 161, 170 n. 40 (D.C.Cir.1983) (in banc) (collecting cases), cert. denied, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984)). Certainly this is such a case; careful scrutiny and particularized scrutiny were required. While we join in many of the thoughts expressed in Judge Pratt's thoughtful concurring opinion, we do not think them essential to decision, in this a case of parties' reliance on the Confidentiality Order approved by the judge.
 
 4. Abstention
 
 21
 Finally, Intervenors suggest that interpreting the Confidentiality Order as providing a defense to a state FOIC request would violate the abstention doctrines articulated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We disagree.
 
 
 22
 Under Younger, federal courts are generally precluded from enjoining a pending proceeding in state court. See 401 U.S. at 41, 91 S.Ct. at 749. This prohibition has been applied to certain pending state administrative proceedings as well. See Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 433-34, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982). Here, Intervenors argue that Younger precludes an interpretation of the Confidentiality Order as providing a defense to a state FOIC proceeding, because such an interpretation would have the same effect as enjoining the FOIC proceeding itself. However, Younger applies "only when state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court.' " Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984) (quoting Hicks v. Miranda, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)). Thus, given that the FOIC proceedings were initiated after the Confidentiality Order was entered, Younger would not apply even if the Order had explicitly enjoined the FOIC proceeding from taking place.
 
 
 23
 Because this case involves a state regulatory scheme, at first glance it might appear that Burford abstention would apply. Burford requires federal courts to abstain where necessary to avoid friction with a complex state regulatory scheme. See 319 U.S. at 332, 63 S.Ct. at 1106-1107. Here, because the Confidentiality Order neither challenged the FOIA scheme, interfered with ongoing FOIC proceedings, nor attempted to avoid a prior state court or agency determination, abstention under Burford is unwarranted. See Alliance of American Insurers v. Cuomo, 854 F.2d 591, 600-01 (2d Cir.1988) (outlining situations in which Burford abstention might be proper).
 
 
 24
 Accordingly, we conclude that the Confidentiality Order provides a valid defense to disclosure of the documents in a state FOIC proceeding. We therefore reverse the judgment of the district court and remand for consideration of Intervenors' motion to vacate the Confidentiality Order under the standards set forth in Palmieri, 779 F.2d at 866.[2]
 
 
 25
 Reversed and remanded.
 
 PRATT, Circuit Judge, concurring separately:
 
 26
 I concur in Chief Judge Oakes' fine opinion and write separately merely to set forth some additional views on the increasing problem that requests for sealing orders and confidentiality orders are presenting to our courts.
 
 
 27
 There must be a strong presumption against sealing any document that is filed with the court. Our courts do not operate in secrecy. Except on rare occasions and for compelling reasons, everything that courts do is subject to direct public scrutiny. To hide from the public eye entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underlying a free, democratic society.
 
 
 28
 There are, of course, some rare exceptions when compelling circumstances may require that certain documents or testimony essential to a judicial proceeding be hidden from public view. The most frequent example is grand jury proceedings. See Fed.R.Crim.P. 6(e)(2). Other examples are indictments that must be temporarily sealed until the charged party can be apprehended, proceedings that involve issues of national security, and applications to the court for privilege rulings.
 
 
 29
 Sealing court papers, however, entails great costs. Not only does it shield from public view the raw material underlying formal judicial action, but the mere mechanics of sealing--the special files required, the extra, locked, vault space, the restrictions on access and other special handling requirements, and the direct and indirect expenses that accompany all of this--combine to make sealed documents not only a nuisance to, but a substantial burden on, the judicial system.
 
 
 30
 For these reasons, it is essential that courts, and not parties to an action, determine what, if any, documents are to be sealed. This determination should not be made on a file-by-file basis, or even on a stipulation of the parties, but instead, the district court, itself, should review each document that the parties seek to have sealed. Without such a careful, document-by-document review, a sealing order represents little more than an imprimatur reflexively placed on determinations that have been made by the parties.
 
 
 31
 A similar troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the court, requires the court to use its contempt power to enforce the private agreement. There are, of course, situations in which judicial enforcement of private confidentialities may be appropriate, convenient, even necessary. One example is the use of such orders to expedite pretrial discovery by reducing the need for judicial supervision. However, because they often involve information not in the control of the court, and may, as in this case, implicate public concerns, confidentiality orders, when not subject to proper supervision, have a great potential for abuse. For this reason, judges should review such agreements carefully and skeptically before signing them.
 
 
 32
 It is uncertain whether the district court engaged in the required document-by-document review in this case. However, even though the parties to the settlement agreement have acted in reliance upon that order, they did so with knowledge that under some circumstances such orders may be modified by the court.
 
 
 33
 Once a confidentiality order has been entered and relied upon, it can only be modified if an "extraordinary circumstance" or "compelling need" warrants the requested modification. F.D.I.C. v. Ernst & Ernst, 677 F.2d 230, 231 (2d Cir.1982) (per curiam). See also, Palmieri v. State of New York, 779 F.2d 861 (2d Cir.1995).
 
 
 34
 Judge Dorsey has already determined that his original order was not improvidently granted, thereby meeting the first standard under the Palmieri test for modification. Palmieri, 779 F.2d at 865. What Judge Dorsey did not do, however, in light of his reinterpretation of his prior order, was to apply the second standard of Palmieri, i.e., whether there were "extraordinary circumstances" or a "compelling need" that would warrant modifying or vacating the order.
 
 
 35
 Therefore, I concur in the majority's determination to reverse and remand to the district court for further proceedings.
 
 
 
 [1]
 Specifically, the order stated, inter alia:
 
 
 [1]
 the file in the above-entitled matter and its contents shall remain under seal;
 
 
 [2]
 the parties, their agents, employees, representatives and attorneys shall not disclose any of the following:
 (a) the file in the above-entitled matter or its contents;
 (b) the Settlement Agreement;
 (c) any document, information or discussion relating to the Settlement Agreement which have [sic] taken place and will take place; ....
 
 
 [2]
 Except for those documents the court has already reviewed (i.e., those documents contained in the court file), appellants should submit to the court for in camera review any documents they believe fall within the Confidentiality Order's terms. Only after the court has certified that these documents are in fact related to the settlement agreement may appellants then shield them from discovery