# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 13-40761

June 20, 2014

Lyle W. Cayce
Clerk

RESSIE MOORE; ALFRED MOORE; BRIDGETTE JETT; ALMARIA LUCAS,

Plaintiffs - Appellants

v.

FORD MOTOR COMPANY,

Defendant - Appellee

VOLVO CAR CORPORATION,

Intervenor - Appellee

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Consolidated with No. 13-40774

MARGARITTO BONILLA; EVA MARIA BONILLA, Individually as Legal Representative of the Estate of David Bonilla and as Next Friend of Andy Bonilla, a Minor,

Plaintiffs - Appellants

v.

FORD MOTOR COMPANY,

Defendant - Appellee

VOLVO CAR CORPORATION,

Intervenor - Appellee

No. 13-40761
c/w 13-40774

Appeals from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a proceeding to enforce agreed protective orders entered ten years ago. Pursuant to these orders, Ford Motor Company produced a number of Volvo Car Corporation documents that it designated as confidential. After objecting to the confidential status of these documents, plaintiffs distributed and used them in litigation against Ford competitors. Ford moved to protect these documents under the agreed protective orders. Rejecting a claim of waiver, the magistrate judge found the documents to be protected by the agreed orders. The district court upheld the magistrate judge. We AFFIRM.

**I**

Approximately a decade ago, the district court entered virtually identical agreed protective orders ("Protective Orders") in *Moore v. Ford Motor Company* and *Bonilla v. Ford Motor Company*. The underlying cases settled, but the parties were not required to return confidential documents.

The Protective Orders state, in pertinent part, that:

> At any time after the delivery of documents designated "confidential," counsel for the receiving party may challenge the confidential designation of any document or transcript (or portion thereof) by providing written notice thereof to counsel for the opposing party. If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate, the producing party shall have fifteen (15) days to move for protective order with regard to any discovery materials in dispute, and shall

2

No. 13-40761
c/w 13-40774

> have the burden of establishing that any discovery materials in dispute are entitled to protection from unrestricted disclosure.  If the producing party does not seek protection of such disputed discovery materials by filing an appropriate motion with this Court within fifteen (15) days, then the disputed material shall no longer be subject to protection as provided in this order.  All documents or things which any party designates as "confidential" shall be accorded confidential status pursuant to the terms of this protective order until and unless the parties formally agree in writing to the contrary or determinations made by the Court as to confidential status.

The Protective Orders also provide that "the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have jurisdiction over the parties and the recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation."

After the Protective Orders issued, Ford produced approximately three and a half banker-boxes of Volvo materials,[1] which it designated as confidential.  According to Ford, these materials were not produced at one time, but were instead produced intermittently over the course of discovery.

On May 11, 2004, plaintiffs' counsel emailed Ford, challenging the confidential status of Volvo documents relating to a presentation allegedly given to the National Highway Traffic Safety Administration, as well as to a European University and local civic groups.  Ford responded on June 4, 2004, asking that plaintiffs' counsel provide the Bates Numbers for the disputed

---

[1] At the time of document production, Volvo was a wholly owned, indirect subsidiary of Ford.

3

No. 13-40761
c/w 13-40774

documents so that Ford could directly address plaintiffs' counsel's concerns. Additionally, Ford agreed to drop its claim of confidentiality as to 12 documents, which it identified by Bates Numbers.

Plaintiffs' counsel responded on June 23, 2004, explaining that "the information Ford wanted to remain confidential had been presented to a wide-variety of individuals, including the media, the University, and civic groups by Vovlo." Plaintiffs then explained that they were "taking the position that all of the materials produced relating to the Volvo XC 90 are no longer confidential and will begin passing them out to any and everyone that is interested." Approximately one month later, plaintiffs' counsel emailed Ford, asking "[w]hat's the word . . . on confidentiality issue[?]" Ford replied the following day, explaining;

> With respect to the confidentiality issues raised in your earlier e-mail, Ford does not contend that the presentations which appear in the NHTSA docket are confidential, and Ford agrees that you need not treat the presentation referenced at page 157 of Broberg's deposition . . . as confidential. Ford is evaluating your claim that the Autoliv and Volvo materials as a whole should no longer be classified as confidential. Ford expects you to abide by the terms of the Protective Orders in the meantime.

Plaintiffs' counsel responded, "I gave Ford adequate time. I am sending the materials out. Thanks for trying." Plaintiffs' counsel did not identify to which "materials" he was referring.

On February 22, 2005, plaintiffs' counsel emailed Ford, asking for another update on the "confidentiality issue." Ford replied by letter on March 8, 2005: "Although Ford disagrees with your arguments in support of de-designating several of the items [identified by Bates Numbers] above, it agrees,

No. 13-40761
c/w 13-40774

in the spirit of cooperation, to officially de-designate (remove from the Protective Order) the above Volvo documents."[2]

On February 1, 2012, Ford received an affidavit from a plaintiff's expert in an Idaho state court action that provided a document listing Volvo documents produced in the *Moore* and *Bonilla* actions. The affidavit explained that plaintiffs' counsel believed that Ford had waived the confidential status of these documents. Soon thereafter, Ford sought to enforce the Protective Orders in the *Moore* and *Bonilla* proceedings where they were originally entered, as well as in *Adams v. Ford*, a District Court for the Virgin Islands case wherein Ford produced the same documents subject to a similar protective order. The *Adams* court granted Ford's motion on March 8, 2012.

On August 24, 2012, the magistrate judge held a hearing on Ford's motion to enforce the Protective Orders. The parties submitted briefs and presented oral argument. The magistrate judge then issued his ruling. First, he explained that the "purpose of protective orders such as the one entered by Judge Ward in the *Moore* and *Bonilla* cases is to facilitate discovery during litigation to allow parties to exchange potentially confidential material with confidence without the Court having to litigate whether or not the material is actually confidential and entitled to protection." He explained that he would try to "give life to the literal meaning on the orders," while keeping in mind their purpose. The magistrate judge then found that "the Plaintiff did put the Defendant on notice of a challenge by way of the e-mails that have been cited of May 11 and June 23." But he found that "Plaintiff continued thereafter to negotiate, and the matter appeared to have been resolved. There's no evidence

---

[2] Although plaintiffs also offer a May 3, 2006 email, we will not consider this on appeal, as it was not in the record before the magistrate judge, whose factual findings we review for clear error. *See* Fed.R.Civ.P. 72(a).

No. 13-40761
c/w 13-40774

of . . . a clear written notice thereafter to Ford challenging the confidential designation of these documents[.]" The magistrate judge explained that later "discussion about waiver are not really challenges to the confidentiality of the documents;" instead, these later discussions "are arguments about whether or not some prior activity waived that protection." The magistrate judge then held that "there is no waiver in this case of the protection of the two protective orders," and that any issue as to whether a document should be afforded confidential status should be addressed by a court where there is a live claim.

Plaintiffs filed an objection to the magistrate judge's order with the district court, and moved for leave to depose a corporate representative of Ford. The district court overruled the objection, and denied the motion. Plaintiffs timely appeal.

**II**

It is axiomatic that "[s]ubject to certain exceptions, this court only has jurisdiction over 'final decisions' of the district court."[3] And discovery orders "generally do not end the litigation on the merits and leave nothing for the court to do but execute the judgment."[4] Here, final judgment has been entered in the original cases,[5] and the appeal of the district court's order overruling plaintiffs' objection is properly taken.

A magistrate judge's non-dispositive order may only be set aside if it "is clearly erroneous or is contrary to law."[6] Accordingly, we review "factual

---

[3] *A-Mark Auction Galleries, Inc. v. Amer. Numismatic Ass'n*, 233 F.3d 895, 897 (5th Cir. 2000) (citing 28 U.S.C. § 1291).

[4] *Id.* (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)) (internal quotation marks omitted).

[5] *See* R. 970–72 (dismissing case with prejudice pursuant to stipulation of dismissal between the parties).

[6] Fed.R.Civ.P. 72(a); 28 U.S.C. § 6369(b)(1)(A) (magistrate judge's nondispositive orders may be reconsidered only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").

No. 13-40761
c/w 13-40774

findings under a clearly erroneous standard," while "legal conclusions are reviewed *de novo*."[7]

Plaintiffs argue that the magistrate judge erred in concluding that Ford did not waive the confidential status of the disputed documents. First, they argue that the plain language of the Protective Orders required Ford to move for a protective order within 15 days of a challenge to the confidential status of a document. Thus, plaintiffs argue, Ford had to move for a protective order within 15 days of June 23, 2004, and its failure to do so constitutes waiver. Second, plaintiffs argue that the magistrate judge's finding that the parties had negotiated and resolved the dispute over confidentiality in 2005 was clearly erroneous.

Analysis begins with the plain language of the Protective Orders,[8] and the "textual interpretation of a court order is ultimately a legal question[.]"[9] At the outset, we note that the Protective Orders are ambiguous and lend themselves to one of two readings. As the magistrate judge—and Ford—read them, the Protective Orders contemplate the following system for challenging the designation of documents as confidential:

(i)     "counsel for the receiving party may challenge the confidential designation of any document or transcript (or portion thereof) by providing written notice thereof to counsel for the opposing party[;]"

(ii)    "If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate[;]"

(iii)   "the producing party shall have fifteen (15) days to move for protective order with regard to any discovery materials in dispute, and shall

---

[7] *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993).

[8] *See, e.g.*, *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) ("The starting point for interpretation of a protective order lies in its plain language.").

[9] *In re Equalnet Comms. Corp.*, 51 F.App'x 483, at *1 (5th Cir. 2002) (unpublished).

No. 13-40761
c/w 13-40774

have the burden of establishing that any discovery materials in dispute are entitled to protection from unrestricted disclosure."

Put another way, the magistrate judge read the Protective Orders to create a system whereby first a party produces documents and designates them as confidential. The receiving party must then inform the producing party that it disagrees with the confidential designation. The parties must then negotiate between themselves to resolve the dispute. Finally, if the parties are unable to resolve the dispute on their own, only then is the producing party required to move for a protective order within 15 days. Such a system is a sound one, as it provides for the efficient handling of confidential materials, and involves the courts only where the parties have failed to resolve disputes on their own.

Plaintiffs and the dissent argue that the 15 day period for seeking a protective order begins with the notification by the receiving party, not the failure to negotiate a resolution. This interpretation may well be the better reading without more, but the parties understanding of these agreed orders bears upon the interpretation,[10] and the actions of both parties strongly suggest that neither understood the 15 days to run from the date of notification: Ford responded over 20 days after plaintiffs' initial objection to request additional information, and plaintiffs' counsel took another 20 days to reply. And although plaintiffs' counsel suggested that he was sending "the materials out" several months after his initial objection, he continued to negotiate with Ford into the following year, asking for an update on the status of the confidential materials. In short, plaintiffs' actions in 2004 and 2005 are

---

[10] Since the Protective Orders are ambiguous in this regard, and given that rules of contract interpretation are applied to agreed orders, *see Hartford v. Chase*, 942 F.2d 130, 134–35 (2d. Cir. 1991), "[p]arol evidence—such as the parties' course of performance—may be used to ascertain the intent of the parties . . . ." *Addicks Services, Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010).

No. 13-40761
c/w 13-40774

at odds with their present interpretation of the Protective Orders. Accordingly, we agree with the magistrate judge's holding that the Protective Orders did not require Ford to seek a protective order until the parties' own negotiations failed to resolve the dispute.

Turning to the magistrate judge's factual findings, we cannot conclude that the magistrate judge's finding that Ford did not waive the Protective Orders is clearly erroneous. Here, Ford produced a number of documents that it designated as confidential. It is undisputed that, at the time of production, these were protected by the Protective Orders until plaintiffs challenged the confidential designation. After receiving the documents, plaintiffs notified, albeit without specificity, Ford that they objected to the confidential status of some of the documents. The parties then engaged in a protracted negotiation, wherein Ford first sought specificity as to which documents plaintiffs' objected to, and then de-designated a number of documents. At this point, there does not appear to be any further discussion between the parties about whether the documents were properly designated as confidential. Since there were no additional objections to the designation of the remaining documents as confidential, Ford was not required to seek protective orders.

To be sure, plaintiffs and the dissent point to affidavits filed in 2006 and 2009 in other cases, wherein plaintiffs' counsel claims that Ford has waived confidentiality. But we cannot say that these affidavits constitute "written notice" to "challenge the confidential designation" of these documents. At best, these only put Ford on notice that plaintiffs' counsel considered Ford to have waived confidentiality, not that the documents were improperly designated as confidential.

Finally, the dissent expresses concern that the magistrate judge's decision countenances gamesmanship by Ford. Yet, the record in this case

9

No. 13-40761
c/w 13-40774

demonstrates gamesmanship by both parties: plaintiffs sought to void confidential designations by vague, generalized objections to all the documents, and Ford likely over-designated documents as confidential. Although on *de novo* review a different outcome may obtain, the magistrate judge's finding that Ford did not waive the protection of the Protective Orders is plausible and supportable by the record and is not clearly erroneous.[11]

## III

We review the "discovery decisions of the trial judge . . . for abuse of discretion."[12] Accordingly, a "district court's discovery decision will be reversed only if it is 'arbitrary or clearly unreasonable,' and the appellant demonstrates prejudice resulting from the decision."[13]

Plaintiffs argue that the district court erred in denying their request for leave to depose Ford's corporate representatives. In so arguing, they rely on *Freeman v. County of Bexar* for the proposition that "a district court may . . . consider evidence presented for the first time in a party's objection to the magistrate judge's recommendation."[14]

Plaintiffs' reliance on *Freeman* is misplaced. At issue there was a report and recommendation, subject to *de novo* review under Fed.R.Civ.P. 72(b). At issue here is a non-dispositive order subject to Rule 72(a) clear error review. Because the district court's review of the magistrate judge's factual findings was limited to clear error review, there appears to be no basis for the district

---

[11] *See, e.g.*, *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.").

[12] *Fielding v. Hubert Burda Media*, 415 F.3d 419, 428 (5th Cir. 2005) (citing *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992)).

[13] *Id.* (quoting *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986)) (internal citation omitted).

[14] 142 F.3d 848, 850–53 (5th Cir. 1998).

No. 13-40761
c/w 13-40774

court to have received additional evidence.[15] Accordingly, the district court did not abuse its discretion in denying leave to depose Ford's corporate representative.

For these reasons, we AFFIRM.

---

[15] *See, e.g.*, *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (Under Rule 72(a), "the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact.").

No. 13-40761
c/w 13-40774

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

I respectfully dissent. Under the plain language of the Protective Orders, Ford waived any claim to confidentiality for the Volvo materials by failing to seek a protective order within 15 days of learning that Plaintiffs disputed their confidentiality and intended to release the Volvo materials.

The rules governing discovery in federal court are designed to "accomplish full disclosure of the facts, eliminate surprise, and promote settlement." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 127 (5th Cir. 1968) (discussing Federal Rule of Civil Procedure 34). As a result, the "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495 (1947). Protective orders serve as narrow exceptions to this general rule of disclosure, and allow parties to keep specific categories of documents confidential by agreement. *See* 8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2043 (3d ed.) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information."). Unless materials are covered by the protective order, they are subject to the liberal disclosure provisions of the Federal Rules of Civil Procedure. "It is for the party resisting discovery to establish, in the first instance, that the information sought is within this provision of the rule." *Id.*

The parties' agreement in a protective order governs not only what materials are protected, but also the method of contesting a confidentiality determination. "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010) (citations omitted). When a protective order is "part of a court-approved agreement, it must be construed according to general principles of contract law." *See City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991) (citations omitted). "Thus, deference is to be paid to the plain

12

meaning of the language . . . and the normal usage of the terms selected." *Id.*
(alteration in original). "An agreed protective order may be viewed as a
contract, and once parties enter an agreed protective order they are bound to
its terms." *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11-CV-0870-D, 2013 WL
3095106, at *3 (N.D. Tex. June 20, 2013) (internal quotation marks and
citations omitted). "As with all contracts, the ultimate question is what was
the parties' mutual intent. The answer to that question is to be found within
[the protective order's] four corners, and not by reference to what might satisfy
the purposes of one of the parties to it." *Id.*

Here, the Protective Orders provide that:

> If the parties are unable to agree as to whether the
> confidential designation of discovery material is
> appropriate, the producing party shall have fifteen
> (15) days to move for protective order with regard to
> any discovery materials in dispute, and shall have the
> burden of establishing that any discovery materials in
> dispute are entitled to protection from unrestricted
> disclosure. If the producing party does not seek
> protection of such disputed discovery materials by
> filing an appropriate motion with this Court within
> fifteen (15) days, then the disputed material shall no
> longer be subject to protection as provided in this
> order.

Thus, under the plain language of the Protective Orders, Ford had 15 days
from the time that it received notice that any discovery materials were in
dispute to seek a protective order from the court.

Plaintiffs repeatedly placed Ford on notice that they intended to release
the materials at issue here, and Ford repeatedly acknowledged that the
confidentiality of these materials was in dispute. On May 11, 2004, Plaintiffs
submitted a written challenge to Ford regarding the confidential status of the
Volvo materials. Again on June 23, 2004, the parties corresponded and

expressed disagreement about the confidentiality of Volvo materials.  Plaintiffs also indicated in the same e-mail that they would not distribute the Volvo materials until July 1, 2004, to give Ford additional time to file a motion for protection with the court or voluntarily remove the confidential designation of the documents, but that after that, the information would be treated as public as set forth in the Protective Orders.  Plaintiffs waited until July 23, 2004, and then made clear to Ford that they considered the discussion of confidentiality over, and intended to release the materials.  As Plaintiffs' counsel stated in a July 23, 2004, e-mail to Ford, "I gave Ford adequate time.  I am sending the materials out."  Ford failed to file a motion within 15 days.  Plaintiffs then proceeded to disseminate the Volvo materials.

These repeated warnings were sufficient to make clear to Ford that the confidentiality of the Volvo materials was in dispute.  Even if these warnings did not put Ford on notice to file its motion, Plaintiffs once again noticed Ford that the confidentiality of the documents was "in dispute" the following year. In February and March of 2005, the parties once again corresponded about the confidentiality of these documents.  In its response to Plaintiffs, Ford explicitly noted that it "disagree[d] with [Plaintiffs'] arguments in support of de-designat[ing]" some of the Volvo materials.  Still, Ford did not file a motion within 15 days.

Finally, in both 2006 and 2009, counsel for Plaintiffs submitted affidavits in litigation against Ford explaining that certain Volvo materials were not subject to protection, and explaining how and why Ford had waived the protected status of those materials.  Once again, Ford failed to file a motion within 15 days of either of these submissions.  Instead, Ford finally filed its

No. 13-40761
c/w 13-40774

motion long after the Volvo materials had been distributed and used in other proceedings.[1]

The panel opinion suggests that the 15-day period for seeking a protective order only begins to run once the parties are unable to resolve the dispute on their own, and seems to allow a limitless period for these party negotiations to occur. But this reading strains the plain language of the Protective Orders, which only require the confidentiality of the documents to be "in dispute" in order to trigger the 15-day period. Even assuming *arguendo* that there was any ambiguity as to whether Ford needed to seek protection from the court, we would construe such ambiguity in favor of Plaintiffs because Ford drafted the Protective Orders. *See Richland Plantation Co. v. Justiss–Mears Oil Co. Inc.*, 671 F.2d 154 (5th Cir. 1982) (explaining that when a contract is ambiguous, Texas courts will construe the agreement more strictly against the party who drafted it). Moreover, by their own terms the Protective Orders placed the burden on Ford,[2] as the party asserting that the Volvo materials were entitled to protection, to establish that such protection was warranted.

---

[1] Plaintiffs assert that they "disseminated the information freely to lawyers, expert witnesses, media representatives, court personnel and others." Plaintiffs' counsel submitted the first affidavit discussed above in *Matey v. Ford*, a case filed in Idaho. Plaintiffs' counsel subsequently filed a similar affidavit in *Jones v. Ford*, a case filed in Texas.

[2] Ford is a sophisticated party, capable of drafting a protective order that had more formal notice requirements or that included clearer language regarding the negotiation of confidentiality. *See U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 142 F. App'x 516, 518 (2d Cir. 2005) ("[T]he plain language of the protective order, which affords broad discretion to the district court, does not support that argument. Indeed, if U.S. Philips and Royal Philips had wished to limit paragraph 11 disclosure in such a fashion, these sophisticated parties could certainly have drafted the protected order to so state. They did not."); *Orthoflex*, 2013 WL 3095106, at *4 ("The parties' mutual intent, as reflected within the four corners of the Protective Order, does not include an exception for information that became public in error. They presumably knew how to include such a clause had this been their intention.").

15

No. 13-40761
c/w 13-40774

Protective orders, like the ones the parties entered into here, are meant to prevent gamesmanship and provide for efficient resolution of discovery issues. *See, e.g.*, 3 Paul J. Bschorr and John F. Collins, Business & Commercial Litigation in Federal Courts § 22:18 (3d ed.) (noting that one role of the protective order is to help prevent abuse of the discovery process); Jay E. Grenig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery & Disclosure § 1:61 (3d ed.) ("The purpose of the protective order is not to prevent full disclosure, but to minimize the disruption and inconvenience inherent in discovery."). Here, the parties designated a 15-day period so that such discovery disputes could be resolved in a timely fashion as they arose. Yet under the panel opinion's interpretation of the provision, Ford was able to undermine this purpose through vague, non-responsive answers to Plaintiffs' notices, and by refusing to answer Plaintiffs at all. Indeed, Ford avoided giving Plaintiffs a straight answer regarding the confidentiality of the Volvo materials for more than eight years after receiving notice that Plaintiffs contested their confidentiality. Allowing Ford to claim that these same materials are protected years too late only encourages gamesmanship in the discovery process, and leaves parties like Plaintiffs here without recourse if the opposing party refuses to take a position regarding confidentiality. Respectfully, I dissent.