JENNIFER WALKER ELROD, Circuit Judge,
dissenting:
I respectfully dissent. Under the plain language of the Protective Orders, Ford waived any claim to confidentiality for the Volvo materials by failing to seek a protective order within 15 days of learning that Plaintiffs disputed their confidentiality and intended to release the Volvo materials.
The rules governing discovery in federal court are designed to “accomplish full disclosure of the facts, eliminate surprise, and promote settlement.” S. Ry. Co. v. Lanham, 403 F.2d 119, 127 (5th Cir.1968) (discussing Federal Rule of Civil Procedure *809 34). As a result, the “deposition-discovery rules are to be accorded a broad and liberal treatment.” Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Protective orders serve as narrow exceptions to this general rule of disclosure, and allow parties to keep specific categories of documents confidential by agreement. See 8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2043 (3d ed.) (“It is well settled that there is no absolute privilege for trade secrets and similar confidential information.”). Unless materials are covered by the protective order, they are subject to the liberal disclosure provisions of the Federal Rules of Civil Procedure. “It is for the party resisting discovery to establish, in the first instance, that the information sought is within this provision of the rule.” Id.
The parties’ agreement in a protective order governs not only what materials are protected, but also the method of contesting a confidentiality determination. “The starting point for interpretation of a protective order lies in its plain language.” S.E.C. v. Merrill Scott & Associates, Ltd., 600 F.3d 1262, 1271-72 (10th Cir.2010) (citations omitted). When a protective order is “part of a court-approved agreement, it must be construed according to general principles of contract law.” See City of Hartford v. Chase, 942 F.2d 130, 134-35 (2d Cir.1991) (citations omitted). “Thus, deference is to be paid to the plain meaning of the language ... and the normal usage of the terms selected.” Id. (alteration in original). “An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms.” Orthoflex, Inc. v. ThermoTek, Inc., 3:11-CV-0870-D, 2013 WL 3095106, at *3 (N.D.Tex. June 20, 2013) (internal quotation marks and citations omitted). “As with all contracts, the ultimate question is what was the parties’ mutual intent. The answer to that question is to be found within [the protective order’s] four corners, and not by reference to what might satisfy the purposes of one of the parties to it.” Id.
Here, the Protective Orders provide that:
If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate, the producing party shall have fifteen (15) days to move for protective order with regard to any discovery materials in dispute, and shall have the burden of establishing that any discovery materials in dispute are entitled to protection from unrestricted disclosure. If the producing party does not seek protection of such disputed discovery materials by filing an appropriate motion with this Court within fifteen (15) days, then the disputed material shall no longer be subject to protection as provided in this order.
Thus, under the plain language of the Protective Orders, Ford had 15 days from the time that it received notice that any discovery materials were in dispute to seek a protective order from the court.
Plaintiffs repeatedly placed Ford on notice that they intended to release the materials at issue here, and Ford repeatedly acknowledged that the confidentiality of these materials was in dispute. On May 11, 2004, Plaintiffs submitted a written challenge to Ford regarding the confidential status of the Volvo materials. Again on June 23, 2004, the parties corresponded and expressed disagreement about the confidentiality of Volvo materials. Plaintiffs also indicated in the same e-mail that they would not distribute the Volvo materials until July 1, 2004, to give Ford additional time to file a motion for protection with the court or voluntarily remove the confidential designation of the documents, *810 but that after that, the information would be treated as public as set forth in the Protective Orders. Plaintiffs waited until July 23, 2004, and then made clear to Ford that they considered the discussion of confidentiality over, and intended to release the materials. As Plaintiffs’ counsel stated in a July 23, 2004, e-mail to Ford, “I gave Ford adequate time. I am sending the materials out.” Ford failed to file a motion within 15 days. Plaintiffs then proceeded to disseminate the Volvo materials.
These repeated warnings were sufficient to make clear to Ford that the confidentiality of the Volvo materials was in dispute. Even if these warnings did not put Ford on notice to file its motion, Plaintiffs once again noticed Ford that the confidentiality of the documents was “in dispute” the following year. In February and March of 2005, the parties once again corresponded about the confidentiality of these documents. In its response to Plaintiffs, Ford explicitly noted that it “disagree[d] with [Plaintiffs’] arguments in support of de-designat[ing]” some of the Volvo materials. Still, Ford did not file a motion within 15 days.
Finally, in both 2006 and 2009, counsel for Plaintiffs submitted affidavits in litigation against Ford explaining that certain Volvo materials were not subject to protection, and explaining how and why Ford had waived the protected status of those materials. Once again, Ford failed to file a motion within 15 days of either of these submissions. Instead, Ford finally filed its motion long after the Volvo materials had been distributed and used in other proceedings.[1]
The panel opinion suggests that the 15-day period for seeking a protective order only begins to run once the parties are unable to resolve the dispute on their own, and seems to allow a limitless period for these party negotiations to occur. But this reading strains the plain language of the Protective Orders, which only require the confidentiality of the documents to be “in dispute” in order to trigger the 15-day period. Even assuming arguendo that there was any ambiguity as to whether Ford needed to seek protection from the court, we would construe such ambiguity in favor of Plaintiffs because Ford drafted the Protective Orders. See Richland Plantation Co. v. Justiss-Mears Oil Co. Inc., 671 F.2d 154 (5th Cir.1982) (explaining that when a contract is ambiguous, Texas courts will construe the agreement more strictly against the party who drafted it). Moreover, by their own terms the Protective Orders placed the burden on Ford,[2] as the party asserting that the Volvo materials were entitled to protection, to *811 establish that such protection was warranted.
Protective orders, like the ones the parties entered into here, are meant to prevent gamesmanship and provide for efficient resolution of discovery issues. See, e.g., 3 Paul J. Bschorr and John F. Collins, Business & Commercial Litigation in Federal Courts § 22:18 (3d ed.) (noting that one role of the protective order is to help prevent abuse of the discovery process); Jay E. Grenig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery & Disclosure § 1:61 (3d ed.) (“The purpose of the protective order is not to prevent full disclosure, but to minimize the disruption and inconvenience inherent in discovery.”). Here, the parties designated a 15-day period so that such discovery disputes could be resolved in a timely fashion as they arose. Yet under the panel opinion’s interpretation of the provision, Ford was able to undermine this purpose through vague, non-responsive answers to Plaintiffs’ notices, and by refusing to answer Plaintiffs at all. Indeed, Ford avoided giving Plaintiffs a straight answer regarding the confidentiality of the Volvo materials for more than eight years after receiving notice that Plaintiffs contested their confidentiality. Allowing Ford to claim that these same materials are protected years too late only encourages gamesmanship in the discovery process, and leaves parties like Plaintiffs here without recourse if the opposing party refuses to take a position regarding confidentiality. Respectfully, I dissent.

. Plaintiffs assert that they "disseminated the information freely to lawyers, expert witnesses, media representatives, court personnel and others.” Plaintiffs’ counsel submitted the first affidavit discussed above in Matey v. Ford, a case filed in Idaho. Plaintiffs' counsel subsequently filed a similar affidavit in Jones v. Ford, a case filed in Texas.

. Ford is a sophisticated party, capable of drafting a protective order that had more formal notice requirements or that included clearer language regarding the negotiation of confidentiality. See U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd., 142 Fed.Appx. 516, 518 (2d Cir.2005) ("[T]he plain language of the protective order, which affords broad discretion to the district court, does not support that argument. Indeed, if U.S. Philips and Royal Philips had wished to limit paragraph 11 disclosure in such a fashion, these sophisticated parties could certainly have drafted the protected order to so state. They did not.”); Orthoflex, 2013 WL 3095106, at *4 ("The parties' mutual intent, as reflected within the four corners of the Protective Order, does not include an exception for information that became public in error. They presumably knew how to include such a clause had this been their intention.”).