FILED
United States Court of Appeals
Tenth Circuit

March 23, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

MERRILL SCOTT & ASSOCIATES,
LTD.; MERRILL SCOTT &
ASSOCIATES, INC.; PHOENIX
OVERSEAS ADVISERS;
GIBRALTER PERMANENTE;
PATRICK M. BRODY; DAVID E.
ROSS, II; MICHAEL G.
LICOPANTIS,

      Defendants.

UNITED STATES OF AMERICA,

      Intervenor-Appellee,

  and

RICHARD GERBER,

      Interested Party-
      Appellant.

No. 08-4029

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:02-CV-00039-TC-DN)**

Submitted on the briefs:[*]

Samuel Rosenthal, Patton Boggs, LLP, New York, New York for Appellant.

Brett L. Tolman, United States Attorney, Stephen J. Sorenson, Assistant United States Attorney, Brian D. Bailey, Special Assistant United States Attorney, Salt Lake City, Utah for Appellee.

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

This case requires us to determine the scope of certain protective orders entered to safeguard personal financial information provided by an alleged tax evader who was also the victim of a securities fraud scheme. Dr. Richard Gerber invested money with defendant Merrill Scott & Associates (Merrill Scott) under a nominee arrangement promising large tax savings. The Securities and Exchange Commission (SEC) subsequently sued Merrill Scott for securities fraud. A receiver was appointed in the SEC action. The receiver took charge of assets belonging to Dr. Gerber's nominee entity, Dark Amethyst, LLC. In order to recover these assets, Dr. Gerber agreed to provide certain personal and confidential financial information to the receiver. The district court entered two

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

protective orders to safeguard the confidentiality of this information.

Dr. Gerber's confidential information later found its way into the hands of the Internal Revenue Service (IRS). Dr. Gerber sought a finding that the SEC had violated the protective orders. He also sought return of his confidential information from the IRS and the Department of Justice (DOJ). For its part, the United States intervened to seek modification of the protective orders specifically to permit disclosure to the IRS. The district court clarified that its protective orders permitted the SEC to disclose Dr. Gerber's confidential information to other governmental agencies, and denied his motion for return of documents. He appeals from this order. He also seeks review of an unappealed order of the magistrate judge permitting the United States to intervene in this action. We dismiss the appeal from the order permitting intervention for lack of jurisdiction, affirm in part and reverse in part the district court's Order and Memorandum Decision modifying the protective orders, and remand for further proceedings.

## BACKGROUND

### 1. First Protective Order

The district court appointed the receiver on January 23, 2002 to marshal and take control of Merrill Scott's assets. On February 2, 2004, pursuant to a stipulation between the SEC, the receiver, and Dr. Gerber, the district court entered the first protective order at issue. This order provided that all confidential information supplied by Dr. Gerber, including documents and

-3-

deposition testimony, would be used solely for the purpose of litigating the SEC action and related litigation commenced by the receiver or the SEC, and for no other purpose, including "any other legal proceedings." Aplt. App. at 120. As relevant here, it further provided that the "Confidential Information shall not be disclosed, repeated, given, shown, made available, or communicated in any way to anyone other than to the following persons to whom it is necessary that such Confidential Information be given for [purposes of pursuing the SEC action and related litigation]: . . . (f) the United States Attorney's Office for the District of Utah." *Id.* The order also provided that "[w]ithin 45 days of the conclusion of this litigation by dismissal, final judgment, disposition of appeal, or settlement, Confidential Information produced in this litigation . . . shall be returned to counsel for Dr. Gerber . . . or else the receiving party shall destroy all such Confidential Information." *Id.* at 122-23. The order provided that it could be modified for good cause. Shortly after the issuance of this protective order, Dr. Gerber provided deposition testimony during which he supplied Confidential Information to the SEC and the receiver.

### 2. Second Protective Order

The second protective order, entered December 8, 2004, involved a number of former clients of Merrill Scott, including Dr. Gerber. It provided that all Confidential Information supplied by these former clients would be "used solely for purposes directly related to this Action" and for no other purpose. *Id.* at 131.

-4-

The Confidential Information would "not be disclosed, repeated, given, shown, made available, or communicated in any way to anyone other than . . . (f) the United States Attorney's Office for the District of Utah *or any other department or agency of the federal government*." *Id.* at 132 (emphasis added). In negotiating the terms of the order with the SEC and the receiver, the former Merrill Scott clients did not agree to the language permitting disclosure to departments or agencies of the federal government other than the United States Attorney's Office. The SEC and the receiver nevertheless approved the order as to form and forwarded it to the district court, which signed it.

The former investors subsequently filed an objection to the order as entered with the district court. They contended, among other things, that the disputed language was improper because the district court had previously ruled that disclosure would be limited to "the U.S. Justice Department, for the reason that the [SEC] was under statutory obligation [to make such disclosures]," but that disclosure should be made to no other federal agency. *Id.* at 140. On December 21, 2004, the district court entered an order removing the reference to "any other department or agency of the federal government," *id.* at 146, and otherwise left the language of the order in place. This second order also provided that it could be modified for good cause.

### 3. Disclosure to the IRS

During the month of August 2005, an IRS Special Agent contacted counsel

for Dr. Gerber. The Agent indicated that he was investigating Dr. Gerber and had reviewed a substantial amount of material concerning him. He subsequently sent Dr. Gerber's attorney a collection of documents, some of which had the word "Confidential" stamped on them and the name "Gerber" with a number, indications that they had been furnished by Dr. Gerber at his deposition in the SEC action. Apparently, the IRS received these documents from the United States Attorney's Office, which in turn had received them from the SEC.

Beginning in late 2005, the IRS issued a number of third-party administrative summonses to banks, law firms, and brokerages concerning Dr. Gerber's tax liability. Dr. Gerber moved in the United States District Court for the District of Columbia to quash the summonses, and the IRS moved to have them enforced. At a meeting in June 2007 with Dr. Gerber's attorneys, IRS Special Agents admitted that they had read Dr. Gerber's deposition taken in the SEC action. After the district court in the summons enforcement action was informed that there had apparently been a violation of the protective order, the IRS withdrew its summons and asked the district court to dismiss the enforcement action as moot.

**4. United States' Motion to Modify Protective Orders**

In October 2007, the district court entered an order approving a settlement between the SEC, the receiver, and Dr. Gerber. Shortly before the settlement, the United States sought to intervene in this action and to modify the protective

orders to permit broader disclosure to and use by agencies other than the SEC. The government admitted that the SEC had provided Confidential Information to the United States Attorney's Office, and that the U.S. Attorney had, in turn, provided this evidence "to interested investigators and auditors of the [IRS]." *Id.* at 165. It argued that this was consistent with the government's reading of the protective orders, which did not restrict the use that the U.S. Attorney could make of the documents. It requested that the protective orders be modified to make it clear that they "permit the United States Attorney's office to use the disclosed information and materials to perform its functions of promoting and enforcing compliance with the civil and criminal laws of the United States." *Id.* at 174.

Dr. Gerber opposed the intervention and filed a cross-motion with the court for return of all documents allegedly disseminated in violation of the protective orders and for discovery to determine the extent of any violation. A magistrate judge assigned to this case granted the motion to intervene. Proclaiming himself "troubled by the lack of information about the precise manner in which materials apparently subject to protective orders in this case have come into the possession of" the IRS, *id.* at 322, he ordered that discovery be permitted.

Dr. Gerber did not file objections to the portion of the order permitting intervention. The government objected to the magistrate judge's decision permitting discovery. The district court subsequently held a hearing on the government's objections. At this hearing, the district court stated, "I apologize

for my errors . . . I clearly contemplated . . . that the SEC could turn [Confidential Information] over to the U.S. Attorney's Office and the [DOJ] . . . . When I signed that other order that did away with that, I was in error." *Id.* at 343.

Dr. Gerber's counsel did not consider this judicial concession of error dispositive. He conceded that the SEC could turn over materials to the DOJ, but only for use "in this action." *Id.* at 344. He argued that the DOJ had therefore violated the order by turning materials over to the IRS, which were being used against him in other contexts. He also argued that Dr. Gerber had given his deposition in reliance on the terms of the protective order, and that disclosure to the IRS of the information he had provided violated his Fifth Amendment privilege against self-incrimination.

**5. District Court's Order**

On January 30, 2008, the district court entered its Order and Memorandum Decision. It ruled, first, that the question of whether Dr. Gerber had knowingly and intelligently waived his Fifth Amendment privilege was not before the court. This issue should be handled in a subsequent criminal proceeding against him, if one were filed. Discovery (as ordered by the magistrate judge) was unnecessary since there was no factual dispute that disclosure occurred and the question was what should be done with the confidential material Dr. Gerber had produced. On that issue, the district court found that "the use restrictions in the February 2004

and December 2004 Protective Orders did not, and do not, apply to the U.S. Attorney's Office or the DOJ," *id.* at 367, particularly since the SEC had a statutory duty to provide materials to the DOJ without interference by the protective orders. "And such a holding extends to the IRS, because even though the IRS is part of the Department of Treasury, it too has obligations to investigate criminal wrongdoing and enforce the tax laws." *Id.* at 367-68. The district court therefore vacated the magistrate judge's order permitting discovery, denied Dr. Gerber's motion for return of documents, and vacated that portion of its order of December 21, 2004 that removed the reference to "any other department or agency of the federal government" from its December 8, 2004 protective order.

## ANALYSIS

### 1. Jurisdiction

We ordered the parties to brief the issue of whether the district court's order on discovery issues was immediately appealable. Also before us is whether this court has jurisdiction over Dr. Gerber's challenge to the magistrate judge's order permitting the government to intervene in this action.

#### A. Intervention Order

Dr. Gerber contends that the government's motion to intervene should have been denied as untimely. He did not, however, specifically object to the magistrate judge's order permitting intervention. His failure to do so strips us of jurisdiction to review the challenged order. "Under [28 U.S.C.] § 636(b)(1)(A), a

-9-

magistrate judge may not issue a final order directly appealable to the court of appeals. Properly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under § 636(b)(1)(A)." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) (citation omitted). *See also* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the [magistrate judge's] order not timely objected to.").

Dr. Gerber contends that he did raise the untimeliness of the government's intervention before the district court. He cites references to the standards required for intervention that he made in his response to the government's objections *to the discovery portion* of the magistrate judge's order. We do not agree that this sufficiently presented the issue of intervention. Dr. Gerber should have filed his own objections to the timeliness of the government's motion to intervene.

Dr. Gerber also contends that his silence did not operate as a waiver because there was nothing to appeal on the intervention issue in the magistrate judge's ruling. He reasons that the magistrate judge merely permitted the government to "intervene" for the limited purpose of responding to discovery and did not actually rule on his primary objections to intervention. A careful reading of the order, however, does not bear out this contention. The magistrate judge specifically found that "the United States of America . . . should be permitted to intervene for the limited purpose of resolving the issues raised in its motion and

-10-

in Dr. Gerber's motion." Aplt. App. at 321. It granted "the motion of the United States of America . . . for purposes of seeking clarification or modification of the protective orders." *Id.* at 322. We therefore conclude that Dr. Gerber's failure to appeal the magistrate judge's order granting intervention deprives us of jurisdiction to hear his appeal of that order.

### B. Discovery/Protective Order

The government contends that we lack jurisdiction to review the district court's discovery order. This court has "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A decision is "final" when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Boughton v. Cotter Corp.*, 10 F.3d 746, 748 (10th Cir. 1993) (quotation omitted). Discovery orders entered during the course of litigation ordinarily are not "final" under this definition. *Id.*

Dr. Gerber contends that jurisdiction exists under an exception to the final order rule known as the "collateral order rule" or "*Cohen* doctrine." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). In order to fall under this exception, "an order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Boughton*, 10 F.3d at 749 (quotation omitted).

As a general matter, "discovery orders are not appealable under the *Cohen* doctrine." *Id.* But we recognized an exception in a case where a third party was granted leave to intervene solely for the purpose of seeking modification of a protective order and where the underlying controversy had already been concluded. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1426 (10th Cir. 1990). In *United Nuclear*, we held this court had jurisdiction either under the *Cohen* doctrine or because the order modifying the terms of a protective order was an appealable final judgment. *Id.*[1]

For similar reasons, the order challenged here also meets the *Cohen* test. It "conclusively determined" the question of whether the protective order would be modified and the Confidential Material returned to Dr. Gerber. The issue of disclosure of the Confidential Material was wholly separate from the underlying merits of this action, which involves alleged violations of the securities laws by another party. And, while the underlying controversy between the SEC and Merrill Scott may not yet have concluded, that portion of the underlying controversy involving Dr. Gerber is complete. There is no indication that he will

---

[1] In *United Nuclear*, this court did not conduct a detailed analysis of the *Cohen* factors. But the Second Circuit, in a case involving facts similar to those of this case, also reached the conclusion that it had jurisdiction over an interlocutory order modifying a protective order, after conducting a complete *Cohen* analysis. *See SEC v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001). *See also Sears v. Nissan Motor Co.*, No. 90-2169, 1991 WL 80741, at *1-*2 (10th Cir. May 16, 1991) (finding order vacating protective order reviewable under *Cohen*).

have any right of review from the district court's modification of the protective order at the ultimate conclusion of this litigation. *Cf. Mohawk Indus. Inc. v. Carpenter*, 130 S. Ct. 599, 607 (2009) (rejecting collateral appeal of discovery order by *party* in part because district court could "vacat[e] an adverse judgment and remand[] for a new trial in which the protected material and its fruits are excluded from evidence."). We conclude that we have jurisdiction to address the merits of the challenged order of the district court.

## 2. Merits

In his appellate briefing, Dr. Gerber complains of many alleged improprieties by the SEC and the IRS in connection with his Confidential Information, and appears to be arguing that these agencies should be sanctioned for disobeying the protective orders. Aplt. Opening Br. at 44. His specific request for relief is, however, quite limited. He asks only that the protective orders be reinstated, and that the government be ordered to return his Confidential Information. *Id.* On remand, the district court should grant him this relief, for reasons we will explain. Dr. Gerber also requests that we reinstate the magistrate judge's order requiring discovery into how the IRS obtained the Confidential Information, but he fails to show any need for further discovery in light of the limited nature of the relief he has requested. Accordingly, we affirm this aspect of the district court's order. Also, in light of the limited relief requested, we need

not consider the propriety of other forms of relief.[2]

"The district court has broad discretion over the control of discovery, and we will not set aside discovery rulings absent an abuse of that discretion." *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 952 (10th Cir. 2004), *abrogated on other grounds by Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). "[A]s a sheer matter of power the court has authority to alter the terms of a protective order it has entered, and . . . ordinarily requests to modify are directed to the district court's discretion and subject to review only for abuse of discretion." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2044.1, at 575-76 (2d ed. 1994). *See also Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) ("The modification of a protective order, like its original entry, is left to the sound discretion of the district court."). "Under [the abuse of discretion] standard, we will not disturb a trial court's decision absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Cummings*, 365 F.3d at 953 (quotation omitted)

Upon consideration, we conclude that the district court abused its discretion by interpreting and/or modifying its previous orders to permit disclosure of

---

[2]    If Dr. Gerber were seeking an order enjoining the IRS from using the Confidential Information in collateral proceedings, for example, concerns about ripeness might arise. Moreover, any attempt to prevent the IRS from obtaining documents it already has received would obviously involve mootness concerns.

-14-

Dr. Gerber's Confidential Material to the IRS, and by denying his cross-motion for the return of documents. Dr. Gerber provided Confidential Material in reliance on the SEC's agreement, incorporated into the district court's protective orders, to limit disclosure of this Confidential Material to the persons and agencies listed in them, and only for the purposes stated. Allowing the government to breach the promises made in the protective orders would encourage similar improper conduct in the future and would discourage future civil litigants from relying on the government's promises. The plain meaning of the protective orders prohibited the disclosures made in this case, and the district court failed to give proper consideration to Dr. Gerber's reliance interest in modifying them.

### A. Plain Meaning of Protective Orders

The starting point for interpretation of a protective order lies in its plain language. *See City of Hartford v. Chase*, 942 F.2d 130, 134-35 (2d Cir. 1991) ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law . . . Thus, deference is to be paid to the plain meaning of the language . . . and the normal usage of the terms selected." (citation and quotation omitted)). Both protective orders provided that the Confidential Information would only be shared for the purposes of pursuing the SEC action and related litigation, and for no other purpose. Each then identified those with whom it would be shared.

-15-

The first protective order specifically limited such "sharing" of Confidential Information for the purposes of pursuing the SEC action and related litigation. The second protective order permitted sharing the information with specified persons "to whom it is necessary that such Confidential Information be given." Aplt. App. at 132. Both the first protective order, and the second as modified by the district court on December 21, 2004, permitted the SEC to provide Confidential Information to the United States Attorney's Office for the District of Utah, which could then use it *for the purposes described in the orders*. As a recipient of Confidential Information, the United States Attorney's Office was prohibited from further disclosing or using it except as specifically provided within the protective orders. *Id.* at 119-20, 131-32. Thus, by their plain language, the protective orders prohibited the disclosures of Confidential Information made to the IRS in this case.

## B. Dr. Gerber's Reliance Interest

Having determined that the disclosure of Dr. Gerber's Confidential Information to the IRS via the United States Attorney's Office violated the plain meaning of the terms of the protective orders, we must next determine whether the district court's subsequent *modification* of the protective orders operated retroactively to repair the problem. We conclude that it did not.

Protective orders serve the vital function of "secur[ing] the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of

-16-

all evidence that might conceivably be relevant." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) (quotation and citation omitted). This being the case, courts should be wary of retroactive attempts to modify them in ways that undermine the justified reliance of a witness such as Dr. Gerber on a valid order circumscribing the use and availability of information disclosed through discovery. Unless protective orders are "fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." *Id.* "[W]itnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders." *Id.* at 295-96.

These concerns overshadow the general rule that "the district court has broad discretion in judging whether [the alleged] injury [to the party opposing modification] outweighs the benefits of any possible modification of the protective order." *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980). Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification. Where, as here, it is the federal government that seeks to undermine the continued integrity of the protective order, however, courts have required a greater showing than the typical standard. Given the government's

-17-

"vast investigatorial resources and power for oppression," *United Nuclear*, 905 F.2d at 1428 n.1, courts have required a showing of "unusual circumstances," *Wilk*, 635 F.3d at 1300, or even "extraordinary circumstances," *United Nuclear*, 905 F.2d at 1428 (quotation omitted), before permitting the government to benefit from access to confidential information provided pursuant to a protective order via modification of the order.

The government fails to identify the presence of such unusual or extraordinary circumstances in this case. For reasons we will explain in the next section of this opinion, the SEC's alleged obligation to cooperate with other governmental agencies by disclosing information to them does not qualify as such an extraordinary circumstance.

## C. SEC's Alleged Regulatory Disclosure Obligations

In ruling against Dr. Gerber, the district court relied, in part, on the SEC's alleged "statutory and regulatory obligation" to share information with other governmental law enforcement agencies. Aplt. App. at 367. While this alleged obligation is reflected in the plain language of the orders permitting sharing of information with specified agencies for very limited purposes, it will not support the nearly unlimited construction placed on it by the government.

The assertion of a law enforcement purpose is insufficient, without more, to justify actions in derogation of a valid protective order. *See Chem. Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91, 93 (S.D.N.Y. 1994). Moreover, we find

this reliance on a law enforcement rationale as a means of bypassing the limitations reflected in the protective orders to be unfounded. The statutes the government identified, *see id.* at 168 n.15, and on which this alleged duty was predicated, are permissive rather than mandatory. *See* 15 U.S.C. § 77t(b) ("The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this subchapter."); 15 U.S.C. § 78u(d)(1) (same); 15 U.S.C. § 78x(c) ("The Commission may, in its discretion and upon a showing that such information is needed, provide all 'records' (as defined in subsection (a) of this section) and other information in its possession to such persons, both domestic and foreign, as the Commission by rule deems appropriate if the person receiving such records or information provides such assurances of confidentiality as the Commission deems appropriate."). *See also* 17 C.F.R. § 240.24c-1(b) (same; further delimiting authorities to whom such information may be provided).

Because, based on these statutes, the SEC's ability to share information with other governmental authorities represents a permissive power rather than a mandatory duty, it does not provide an extrinsic limit on the SEC's ability to enter into binding protective orders. The SEC can certainly make a discretionary decision to forego its opportunity to share documents with others, including law enforcement agencies, in the interest of obtaining such documents from a

-19-

deponent.

Moreover, we cannot endorse the government's shift of position here. Having cabined its discretion by agreeing to a protective order that limited the purposes for which Confidential Information could be shared--thus showing a lack of concern for the effect of such limitations on the use of the Confidential Information for law enforcement purposes--it is odd to find the government now advancing a much broader alleged law enforcement "duty" as a shield to a charge that it violated the protective order.

### D. Limits on Enforceability of Protective Orders

The government makes two arguments for exempting the U.S. Attorney/DOJ from the strictures of the protective orders. It argues, first, that because the U.S. Attorney/DOJ was not a party to the protective orders, it could not be bound or limited by them and was therefore not prevented from turning over information to the IRS. While in general a nonparty is not bound by a protective order, *see Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1119 (10th Cir. 2004) (en banc) (Kelly, J., concurring in part and dissenting in part), *reversed on other grounds*, 545 U.S. 748 (2005), that rule is inapplicable under the particular facts of this case. To facilitate cooperation between federal government agencies, the protective orders permitted the nonparty U.S. Attorney/DOJ to receive Confidential Information without the need to intervene and seek disclosure through a motion under Fed. R. Civ. P. 24. But the protective

orders also contemplated that the U.S. Attorney/DOJ would only receive such documents pursuant to its terms, which prohibited their further dissemination.

The U.S. Attorney/DOJ was specifically named in the protective orders and it is clear that its receipt of documents from the SEC, which was unquestionably a party to the protective order and bound by its terms, was permitted only because the U.S. Attorney/DOJ was permitted to act "in concert with" the SEC in sharing information. *Cf. In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 419 (E.D.N.Y. 2007) (stating that under Fed. R. Civ. P. 65(d), persons named in an injunction who act in concert with other parties are considered "parties" for purpose of its binding effect). Moreover, the government does not argue that the U.S. Attorney/DOJ lacked actual knowledge of the protective orders. The U.S. Attorney/DOJ's receipt of the Confidential Information was therefore conditioned upon its obedience to the plain language of the protective orders forbidding further disclosure, and it was not free to violate them by sharing the Confidential Information with the IRS.

The government's other argument relies on its contention that the protective orders did not require that the United States Attorney's Office be given notice of the limited use to which Confidential Information could be put. Aplee Br. at 4. It claims that "the intent of the disclosure provision was to exempt the Department of Justice from *any* restrictions" on the use of the Confidential Information. *Id.* at 16 (emphasis added). The district court "clarified" in its

-21-

modification order that "the use restrictions in the . . . Protective Orders did not . . . apply to the U.S. Attorney's Office or the DOJ." Aplt. App. at 367. But this interpretation runs contrary to the plain language of the orders, as we have noted above. We therefore cannot accept the government's argument that would permit it unlimited use of the Confidential Information simply by passing it through the U.S. Attorney/DOJ.

### E. Use Immunity Argument

The government further argues that by insisting on enforcement of the protective orders, Dr. Gerber is essentially requesting to be granted use immunity for his testimony in the SEC proceedings. Citing *In re Grand Jury Subpoena*, 836 F.2d 1468 (4th Cir. 1988), it contends that such immunity is unavailable in a civil proceeding. The government further argues that Dr. Gerber has no right to use a protective order as a substitute for either seeking immunity or invoking his Fifth Amendment rights in subsequent proceedings.

These contentions, however, distort Dr. Gerber's position. He has not requested use immunity or even de facto use immunity in this action. He has merely asked the district court to enforce its own protective order in the instant civil suit. Such enforcement does not represent an actual or de facto grant of use immunity.

Moreover, the facts of *In re Grand Jury Subpoena* are easily distinguished from those in this case. There, the Fourth Circuit, relying in part on "[t]he

sweeping power of the grand jury to compel the production of evidence," *id.* at 1471, ruled that deponents in a civil case could not use a civil protective order to block a grand jury criminal subpoena requiring production of their sealed depositions. But no such criminal subpoena is at issue in this case.[3] The IRS obtained the Confidential Information through the SEC and DOJ's voluntary disclosure, not through a criminal subpoena. This disclosure, unprompted by a grand jury subpoena, clearly violated the plain language of the protective order. The government's "use immunity" argument fails.

### F. Return of Documents

The February 2, 2004 protective order requires that within 45 days of the conclusion of litigation, the Confidential Information be returned to counsel for Dr. Gerber, or destroyed. Aplt. App. at 123. The district court denied Dr. Gerber's request that the Confidential Information in the hands of the IRS be returned to him. It noted that "[w]hen the Protective Orders were issued, the court clearly contemplated that the SEC could and would turn over the material to the U.S. Attorney's Office and the DOJ for law enforcement purposes and that the material would not be returned." *Id.* at 367. Again, this interpretation runs

---

[3]    The Fourth Circuit noted that the government had two options in seeking to obtain the deposition transcripts: it could subpoena the transcripts as part of a grand jury investigation, or seek permissive intervention in the civil action to request that the protective order be modified or vacated. *Grand Jury Subpoena*, 836 F.3d at 1470. The government chose the latter option in this case.

contrary to the plain language of the first protective order. On the rationale advanced in its order, the district court's decision to permit the IRS to keep the Confidential Information represents an abuse of discretion, for the reasons we have outlined in this opinion.

## CONCLUSION

We DISMISS Dr. Gerber's appeal for lack of jurisdiction to the extent that it challenges the district court's order permitting the United States to intervene in this action. We AFFIRM the district court's Order and Memorandum Decision to the extent it denies further discovery, REVERSE those portions of the order (1) denying Dr. Gerber's request for return of documents, and (2) modifying and/or interpreting the protective orders in derogation of their plain language, and REMAND for further proceedings in accordance with this opinion.