**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MTGLQ INVESTORS, LP,

    Plaintiff Counter Defendant -
    Appellee,

v.

MONICA WELLINGTON,

    Defendant Counterclaimant -
    Appellant,

and

THE MONICA L. WELLINGTON
DECLARATION OF TRUST, Dated
December 28, 2007; ALTURA VILLAGE
HOMEOWNERS ASSOCIATION,

    Defendants,

v.

J.P. MORGAN CHASE BANK, N.A.;
WEINSTEIN & RILEY, P.S.;
ELIZABETH V. FRIEDENSTEIN;
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

    Counter Defendants - Appellees,

and

PROFOLIO HOME MORTGAGE
CORPORATION,

    Counter Defendant.
_____

No. 20-2000
(D.C. No. 1:17-CV-00487-KG-LF)
(D. N.M.)

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Monica Wellington, appearing pro se, appeals the district court's judgment of foreclosure and sale and other rulings.  We affirm.

## I.  BACKGROUND

On February 20, 2007, Wellington obtained a mortgage loan from Profolio Home Mortgage Corporation (Profolio) for the purchase of a house in New Mexico. She executed a promissory note (Note) in favor of Profolio.  The Note provided that if she defaulted on her payment obligations, the Note holder could require immediate payment in full.  An allonge to the Note, also dated February 20, 2007, bears an indorsement to Ohio Savings Bank.  The allonge also contains an undated indorsement in blank signed by an authorized agent of Ohio Savings Bank.  To secure the debt evidenced by the Note, Wellington executed and delivered a mortgage on the property to Mortgage Electronic Registration Systems, Inc. (MERS), solely as Profolio's nominee.  The mortgage was recorded in the Bernalillo County Clerk's Office.

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Wellington's last payment on the Note was in 2011. In January 2017, MTGLQ filed a foreclosure action in New Mexico state court, seeking both foreclosure on the property and a judgment against Wellington personally for the unpaid principal of some $125,000 plus interest, late charges, taxes, assessments, insurance, and other expenses necessary to preserve the property. MTGLQ attached to its complaint a copy of the Note and the allonge and alleged that it was in possession of the original. MTGLQ also alleged that in 2012, MERS erroneously filed a release of mortgage with the county clerk's office and soon thereafter erroneously assigned the mortgage, as Profolio's nominee, to JPMorgan Chase Bank, N.A. (JPMC). The assignment was recorded in the clerk's office. MTGLQ further alleged that in 2016, MERS assigned the mortgage to MTGLQ. Due to the recording of the allegedly erroneous assignment to JPMC, MTGLQ named JPMC as a defendant.[1]

Wellington removed the action to federal district court and filed thirteen counterclaims under the Fair Debt Collection Practices Act (FDCPA) against MTGLQ, the lawyer and law firm representing MTGLQ, and the company servicing the loan for MTGLQ, Rushmore Loan Management Services, LLC (Rushmore). She also sought declaratory relief against MTGLQ, JPMC, and Profolio. In response to

---

[1] MTGLQ also named three other defendants. The district court dismissed the claim against one of them (Wellington's unnamed spouse) and entered default judgment against the other two (a trust to which Wellington had conveyed the property and a homeowners association). Those procedural facts are immaterial to our merits disposition, but we have considered them in determining that we have jurisdiction over this appeal. *See* part II., *infra*.

3

motions to dismiss her counterclaims, Wellington amended them. After extensive motions practice, the district court dismissed Wellington's amended FDCPA counterclaims without prejudice; denied her motion for leave to further amend her counterclaims; dismissed her claim for declaratory relief against MTGLQ and JPMC with prejudice;[2] entered a stipulated judgment between MTGLQ and JPMC foreclosing JPMC's interest in the property; granted summary judgment to MTGLQ on its claims against Wellington; and entered a Judgment of Foreclosure and Sale, and Appointment of Special Master (Judgment of Foreclosure, or Judgment). Wellington appeals.

## II. APPELLATE JURISDICTION

Before addressing the merits of this appeal, we first consider our own jurisdiction. In the Judgment of Foreclosure, the district court stated that it retained jurisdiction over confirmation of the sale and, "if necessary," "assisting the purchaser at the foreclosure sale, or its successor and assigns, in obtaining possession of the property" and "entering a deficiency judgment upon approval of the Special Master's Report subsequent to the foreclosure sale." R. Vol. III at 50. The court also retained jurisdiction "for determining all other issues presented in this action and not specifically ruled on in this Judgment of Foreclosure." *Id.*

Concerned that the district court's retention of jurisdiction might affect the finality of its Judgment of Foreclosure, we ordered Wellington to file a memorandum

---

[2] In her amended counterclaims, Wellington did not seek relief against Profolio.

4

providing a basis for appellate jurisdiction. She did so, and MTGLQ also filed a memorandum on the issue. Having reviewed the parties' submissions, the record, and the relevant law, we conclude that the only matters left for the district court's determination are ancillary to the Judgment of Foreclosure, and therefore the Judgment is final for purposes of our jurisdiction under 28 U.S.C. § 1291. As we observed in *United States v. Simons*, 419 F. App'x 852 (10th Cir. 2011), it "has long been established that 'a decree of sale in a foreclosure suit, which settles all the rights of the parties and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal.'" *Id.* at 855 (quoting *Grant v. Phoenix Mut. Life Ins. Co.*, 106 U.S. 429, 431 (1882)). The Supreme Court explained in *Whiting v. Bank of United States*, 38 U.S. (13 Pet.) 6, 15 (1839), that an "original decree of foreclosure and sale [is] final upon the merits of the controversy," and defendants have "a right to appeal from that decree, as final upon those merits, as soon as it was pronounced, in order to prevent an irreparable mischief to themselves[,] . . . without and independent of any ulterior proceedings." *See also N.C. R.R. Co. v. Swasey*, 90 U.S. 405, 409 (1874) (same, adding that "[t]he sale in such a case is the execution of the decree"); *Ray v. Law*, 7 U.S. (3 Cranch) 179, 180 (1805) (stating that "a decree for a sale under a mortgage[] is such a final decree as may be appealed from").[3]

---

[3] In a split decision, the Seventh Circuit has concluded otherwise, holding that a foreclosure judgment was not final under § 1291 because (1) the owner of the property retained statutory rights to redeem or reinstate the mortgage before a judicial sale; (2) if a judicial sale occurred, it would need to be confirmed in a further

5

## III. DISCUSSION

Having established our appellate jurisdiction, we turn to the four issues Wellington raises on appeal, construing her pro se filings liberally but without acting as her advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### A. Real party in interest and Article III standing

Wellington first argues that because MTGLQ is not, as it claimed to be, a limited partnership but is instead an unincorporated association, it was not a real party in interest under Federal Rule of Civil Procedure 17 and also lacked constitutional standing. MTGLQ argues that Wellington waived appellate review of this issue by not raising it before the district court.[4] We agree that we may not

---

judicial proceeding; and (3) the amount of any deficiency judgment could not be determined until the sale was held and the parties had an opportunity to contest its fairness. *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775-77 (7th Cir. 2015). Although similar factors are present here, we are not persuaded by the *Townsend* majority's opinion because it fails to address the Supreme Court's long-standing precedent on the issue. Indeed, the only circuit court outside of the Seventh Circuit that has considered *Townsend* sided with the dissenting opinion, which relied on that precedent, *see MSCI 2007-IQ16 Granville Retail, LLC v. UHA Corp.*, 660 F. App'x 459, 460 (6th Cir. 2016); *see also Townsend*, 793 F.3d at 784-85 (Hamilton, J., dissenting) (discussing *Whiting*, *Swasey*, *Grant*, and *Ray*). Like the Sixth Circuit, we agree with the *Townsend* dissent.

[4] MTGLQ also argues that Wellington waived this and other issues by failing to provide a sufficient record for appellate review. But MTGLQ overlooks that "[w]hen the appellant is pro se, the court prepares and dockets a record on appeal." 10th Cir. R. 10.1. And we have supplemented the record to remedy the omission of any necessary documents.

review this issue, but to fully explain why, we must first set out the relevant procedural facts.

Wellington's argument is based on an affidavit describing MTGLQ's organizational structure that was filed in response to the district's court order to disclose the citizenship of MTGLQ's limited partner and its general partner for purposes of determining diversity jurisdiction. *See* R. Vol. II at 165-66, 168 (order); Supp. R. at 102-03 (affidavit). According to the affidavit, MTGLQ is a Delaware limited partnership whose one general partner is MLQ, L.L.C., and its limited partner is The Goldman Sachs Group, Inc. (GSG). MLQ, L.L.C. has two members: (1) Goldman Sachs Global Holdings L.L.C. and (2) GSG. Goldman Sachs Global Holdings L.L.C. has two members: (1) Goldman Sachs Holding Company LLC and (2) GSG. And the Goldman Sachs Holding Company LLC has only one member— GSG.

Because the deadline for pretrial motions had passed by the time MTGLQ filed the affidavit, Wellington moved to amend the scheduling order so she could file a motion challenging whether MTGLQ was the real party in interest under Rule 17.[5] According to Wellington's one-sentence argument, the affidavit revealed that MTGLQ's "purported 'partnership' ultimately consists of only a single party," which

---

[5] In relevant part, Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest," and, subject to exceptions not applicable here, capacity to sue is determined "by the law of the state where the court is located," Fed. R. Civ. P. 17(a), (b)(3).

7

called into question MTGLQ's legal existence as a limited partnership. Supp. R. at 106 n.1.

The magistrate judge denied the motion to amend the scheduling order because the affidavit stated that MTGLQ consisted of a general partner and a limited partner, and that structure met a law-dictionary definition of "limited partnership." *Id.* at 110-11. The magistrate judge also determined that Wellington had not shown good cause to revisit the court's previous determinations that MTGLQ had standing to enforce the Note. *Id.* at 110 n.1.[6]

Wellington did not object to the magistrate judge's order, but she raised the issue again in her response to MTGLQ's motion to appoint a receiver. *See* R. Vol. II at 191-95. There, she developed her argument more fully, as follows: MTGLQ ultimately consists of nothing more than a single entity—GSG—and therefore it is not a bona fide limited partnership under Delaware law.[7] Consequently, it is only an unincorporated association and lacked standing to sue under New Mexico law.[8]

---

[6] Those previous determinations did not involve the attack on MTGLQ's claim to be a limited partnership but instead concluded MTGLQ had standing because it had attached to its complaint a copy of the Note and the allonge to the Note. *See* R. Vol. I at 250; *id.* at 327. We discuss that aspect of standing in Part III.C.1.

[7] Wellington argued that Delaware law requires two or more persons for a valid partnership. *See* Del. Code Ann. tit. 6, § 15-202(a), (b).

[8] *See Blue Canyon Well Ass'n v. Jevne*, 410 P.3d 251, 255 (N.M. Ct. App. 2017) (explaining that unincorporated associations have no legal existence and may not bring suit unless they comply with certain statutory requirements).

The district court treated the argument as a motion to reconsider the magistrate judge's ruling that MTGLQ was a limited partnership and declined to address it because Wellington had not complied with procedural rules regarding the filing of motions. *See id.* at 226.

With this background, we turn to the question at hand—may we review Wellington's appellate argument that MTGLQ is not a bona fide limited partnership and therefore lacks standing under New Mexico law? We may not, because Wellington did not file objections to the magistrate judge's order denying her motion to amend the scheduling order. The motion to amend involved a pretrial matter that magistrate judges may "hear and determine" when designated to do so under 28 U.S.C. § 636(b)(1)(A).[9] Under that statute, "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.* To obtain review by the district judge, Wellington needed to "serve and file objections to the

---

[9] Section 636(b)(1)(A) authorizes a district judge to

> designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

By operation of local rule, when this case was removed to federal court, a "pre-trial" magistrate judge was automatically designated "to preside over all non-dispositive pre-trial matters." D.N.M.LR-Civ. 73.1(a).

order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). She did

not do so, so she "may not assign as error a defect in the order." *Id.* This prohibition

is jurisdictional. *See SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1269

(10th Cir. 2010).[10]

Finally, Wellington contends that we may review MTGLQ's business status as

a matter of Article III standing because "constitutional standing is a jurisdictional

matter that must be addressed even if raised for the first time on appeal," *First Am.*

*Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 889 (10th Cir. 2018). We reject

this contention. A constitutional "standing challenge is not properly raised in

connection with real party in interest analysis under Rule 17(a)." *K-B Trucking Co.*

*v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 (10th Cir. 1985). "Using the term 'standing'

to designate real-party-in-interest issues tempts courts to apply standing principles

---

[10] In reaching this conclusion, we recognize that Wellington's response to MTGLQ's motion to appoint a receiver, where she raised the substantive issue of MTGLQ's claim to be a limited partnership, was filed within 14 days of the magistrate judge's order denying the motion to amend the scheduling order. Thus, her response might be construed as a timely objection to the order. But D.N.M.LR-Civ 73.1(a) provides that "[o]bjections to a non-dispositive pre-trial matter decided by a pre-trial Magistrate Judge will follow the procedures and requirements set forth in D.N.M.LR-Civ 7.3, 7.4 and 7.5," which govern the filing of motions, and Wellington's response to the motion to appoint a receiver was not a motion. Hence, we understand the district court's procedural refusal to reconsider the magistrate judge's determination regarding MTGLQ's business status as based on Wellington's failure to separately file objections to the order denying the motion to amend the scheduling order. We see no abuse of discretion in the court's decision to do so, even though Wellington represented herself. *See McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1147 (10th Cir. 2006) ("We review a district court's application of its local rules for abuse of discretion."); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[P]ro se parties [must] follow the same rules of procedure that govern other litigants." (internal quotation marks omitted)).

outside the context in which they were developed." *FDIC v. Bachman*, 894 F.2d 1233, 1236 (10th Cir. 1990). "Even if standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues, this does not convert real party in interest into a nonwaivable issue of subject matter jurisdiction." *Id.*

## B. Magistrate Judge orders concerning discovery

Wellington's second issue concerns the magistrate judge's orders (1) denying motions she filed to compel initial disclosures and interrogatories, (2) imposing monetary sanctions against Wellington, and (3) granting MTGLQ's motion for a protective order. *See* R. Vol. II at 215-18; Supp. R. at 81-101. MTGLQ contends that because Wellington did not file objections to any of those orders with the district court, she has waived appellate review of them. Wellington replies that we may review her arguments about these orders because she appeared before the district court pro se and the magistrate judge did not notify her of the requirement to file timely objections to the orders. Alternatively, she argues that the interests of justice require us to review the orders for plain error.

We agree with MTGLQ. To be sure, we have "adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005). And "[t]his rule does not apply . . . when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review." *Id.* But those rules apply to *recommendations*

11

on *dispositive* matters that magistrate judges submit under § 636(b)(1)(B), which are governed by the objection procedure set out in Federal Rule of Civil Procedure 72(b)(2). *See id.* Different rules apply to magistrate judge *orders* on *non*dispositive matters under § 636(b)(1)(A). Such orders are governed by Rule 72(a), which establishes a 14-day deadline for objections and provides that "[a] party may not assign as error a defect in the order not timely objected to." Thus, the firm-waiver rule and the exceptions to it do not apply to orders issued under § 636(b)(1)(A) and governed by Rule 72(a), such as the discovery orders Wellington challenges. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (holding that "a pro se litigant who fails to object timely to a magistrate judge's order on a non-dispositive matter waives the right to appellate review of that order, even absent express notice from the magistrate judge that failure to object within ten days [now 14 days] will preclude appellate review"); *United States v. Schultz*, 565 F.3d 1353, 1362 (11th Cir. 2009) (same). And as we have discussed, the failure to timely and specifically object to a magistrate judge's order on a non-dispositive matter "strips us of jurisdiction to review the challenged order." *Merrill Scott*, 600 F.3d at 1269. We therefore cannot review the challenged orders, even for plain error or in the interests of justice.

## C. Judgment in favor of MTGLQ

We perceive two arguments in Wellington's third issue: (1) MTGLQ never established standing under New Mexico law to enforce the Note or to foreclose and (2) the district court should have excluded an affidavit MTGLQ submitted in support of its motion for summary judgment. We address these arguments in order.

12

### 1. Standing under New Mexico law

Wellington argues that MTGLQ lacked standing under New Mexico law to enforce the Note and foreclose on the property because it did not demonstrate a right to do either. We disagree.

The district court addressed standing to enforce the Note in an order denying Wellington's motion to dismiss MTGLQ's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* R. Vol. I at 248-52. When it later granted summary judgment to MTGLQ, the court considered it undisputed that MTGLQ was the holder of the Note and therefore entitled to judgment on its claims against Wellington personally. *See* R. Vol. II at 212. Thus, whether this standing issue is framed in terms of the district court's refusal to dismiss MTGLQ's complaint or its grant of summary judgment, our review is de novo. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020) (summary judgment); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (Rule 12(b)(6)).

In New Mexico, "a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint." *Deutsche Bank Nat. Tr. Co. v. Johnston*, 369 P.3d 1046, 1054 (N.M. 2016). The district court determined that MTGLQ met this burden by attaching a copy of the Note and the allonge to its complaint. The court further explained that because the most recent indorsement on the allonge was in blank, MTGLQ was the holder of the Note and therefore entitled

13

to enforce it as bearer paper. *See* N.M. Stat. Ann. § 55-3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement'. When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specifically indorsed."). Finally, the court ruled that because Wellington failed to raise a genuine issue regarding the authenticity of the Note and the allonge, a copy of those documents was admissible under Federal Rule of Evidence 1003, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."[11]

Before us, Wellington argues that MTGLQ was required to produce the original Note. In support, she relies on *Miller v. Deutsche Bank National Trust Co. (In re Miller)*, 666 F.3d 1255 (10th Cir. 2012). Although we fail to see where she raised this issue in the district court, *In re Miller* is readily distinguishable. There, a bank that held a copy of a note indorsed in blank argued that a Colorado statute concerning qualified holders permitted it to foreclose without presenting an original note to a public trustee. *Id.* at 1264-65. We rejected that argument because there was no evidence that the bank or its attorneys had complied or intended to comply with certain statutory requirements. *See id.* at 1265. In so doing, we did not craft a rule or

---

[11] In the district court, Wellington argued that the Note was not authentic because it contained redactions and two extraneous swirl marks in the upper margin. Wellington does not raise these arguments on appeal.

imply that an original promissory note is required to foreclose under Colorado law, much less New Mexico law, which applies here.

Relatedly, Wellington argues that we should vacate the Judgment of Foreclosure because the district court did not comply with D.N.M.LR-Civ. 58.1. That rule sets out steps the district court is to take when a final judgment is based on a negotiable instrument: "The instrument must be . . . filed as an exhibit upon entry of judgment; merged into the judgment and marked as merged; and marked with the docket number of the action." *Id.* (bullet points omitted). Wellington also contends these requirements indicate the original Note was required in this case. We are not persuaded. District courts have discretion in the application of their local rules, *see McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1147 (10th Cir. 2006), so we will not void the Judgment of Foreclosure simply because the Note was not filed as an exhibit to it or marked as Rule 58.1 requires. And although Rule 58.1 might require production of an original negotiable instrument, it says nothing about whether a copy whose authenticity is unsuccessfully challenged is sufficient evidence of standing under New Mexico law.

As for standing to foreclose, Wellington argues that MTGLQ did not demonstrate it was a successor in interest to the mortgage because it provided no evidence supporting its allegations that the mortgage had been erroneously assigned to JPMC and later properly assigned to MTGLQ. But regardless of any uncertainty about the assignment, MTGLQ had the right to foreclose the mortgage because it had established a right to enforce the note. *See Flagstar Bank, FSB v. Licha*, 356 P.3d

15

1102, 1107, 1110 (N.M. App. 2015) (explaining that the holder of a note may enforce it, and "the right to foreclose the mortgage automatically follows the right to enforce the note"), *abrogated on other grounds as recognized in PNC Mortg. v. Romero*, 377 P.3d 461, 466-67 (N.M. App. 2016). We therefore reject Wellington's argument.

### 2. Bennett affidavit

In support of its motion for summary judgment, MTGLQ submitted the affidavit of Michael Bennett, an attorney who worked for Rushmore, the company that serviced the mortgage loan for MTGLQ. Bennett stated under penalty of perjury that MTGLQ possessed the original Note and was the assignee of the mortgage, that Wellington was in default, and that she owed MTGLQ approximately $200,000. *See* R. Vol. II at 26-27. In support of the amount owed, Bennett attached a copy of MTGLQ's business records showing principal balance, interest owed, and various fees and charges. In opposing summary judgment, Wellington argued that Bennett's affidavit should be excluded because MTGLQ never disclosed Bennett as a witness, the business records attached to the affidavit were only a summary that was inadmissible hearsay, and MTGLQ failed to supply the underlying records.

The district court rejected these arguments. *See id.* at 205-11. The court determined that the failure to disclose Bennett as a potential witness was harmless because (1) Bennett had verified MTGLQ's responses to Wellington's first set of interrogatories; (2) Wellington did not follow through on deposing an MTGLQ representative; and (3) Wellington had not demonstrated bad faith or willfulness on MTGLQ's part. The court further concluded that the statements in the affidavit were

16

admissible under the business-records exception to the hearsay rule, *see* Fed. R. Evid. 803(6), because (1) Wellington provided no evidence contradicting Bennett's statement that he was the attorney-in-fact for MTGLQ; (2) although Bennett worked for Rushmore, he was familiar with MTGLQ's business records through the regular performance of his job, he stated that he had personally examined them, and Rushmore necessarily incorporates MTGLQ's business records into its own business records in order to service loans and mortgages; and (3) the records otherwise met all the requirements of the business-records exception.

Wellington now complains that the district court made MTGLQ's arguments for it. While that appears true, it is equally the case that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law," *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Wellington also reiterates the arguments she advanced in the district court. But we agree with the district court's analysis of the admissibility of Bennett's affidavit. We therefore reject Wellington's appellate arguments and uphold the district court's ruling on the affidavit for substantially the same reasons the district court provided.

### D. Wellington's claims

Wellington also challenges the district court's dismissal with prejudice of her first amended claim for declaratory relief against MTGLQ and JPMC and its denial

17

of her motion for leave to file second amended FDCPA counterclaims as futile. We begin with the dismissal of her claim for declaratory relief.

Wellington sought a declaration that neither MTGLQ nor JPMC had any right against her or the property because neither had received a legitimate assignment of the mortgage and MTGLQ had never received a legitimate assignment of the Note. This claim is now moot in light of (1) the stipulated judgment JPMC and MTGLQ entered, in which JPMC disclaimed any right to the property; and (2) our conclusion that the district court properly determined MTGLQ had the right to enforce the Note as a holder, which gave MTGLQ the right to foreclose on the mortgage regardless of any irregularities in the assignment of the mortgage. Under these circumstances, reversal and remand on Wellington's claim for declaratory relief would be ineffective because any success on that claim is now foreclosed. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1251 (10th Cir. 2009) (explaining that the "inability to grant effective relief . . . renders [an] issue moot." (internal quotation marks omitted)).

We next turn to the district court's denial of Wellington's motion for leave to file a second amended complaint. Typically, we review the denial of leave to amend for abuse of discretion, but where, as here, the denial is based on a determination that amendment would be futile, we review de novo the legal basis for the finding of futility. *Id.* at 1249.

The district court dismissed Wellington's first amended FDCPA counterclaims without prejudice because she failed to allege facts plausibly suggesting that any of

18

the defendants named in those claims (MTGLQ, its law firm, one of the firm's attorneys, and Rushmore) was a debt collector within the meaning of the FDCPA. In denying her motion for leave to file second amended counterclaims, the district court determined that although Wellington had now adequately alleged that the counterclaim defendants were debt collectors, allowing amendment of her FDCPA claims was futile on other grounds. We agree.

In her first counterclaim, Wellington sought damages against MTGLQ, its law firm, and the firm's attorney for filing the *in personam* claim against Wellington in New Mexico even though she resided in California and MTGLQ's complaint failed to allege that she signed the Note in New Mexico. Her theory was that venue on the *in personam* claim was governed by 15 U.S.C. § 1692i(a)(2), which permits a debt collector to bring a legal action to collect on a debt from a consumer "only in the judicial district or similar legal entity—(A) in which [the] consumer signed the contract sued upon; or (B) in which [the] consumer resides at the commencement of the action." The district court denied leave to amend this counterclaim because Wellington did not allege that she signed the Note outside of New Mexico.

Wellington maintains that she alleged as much, and arguably, she is correct. *See* Supp. R. at 67, ¶ 13 (alleging that "neither of [the locations for venue described in § 1692i(a)(2)] are/were New Mexico"). But this counterclaim fails for another reason, and we may affirm for any reason supported by the record, even if the district court did not rely on it, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878-79 (10th Cir. 2017).

19

Section 1692i(a)(2) provides that its venue provisions apply only if an action is "not described in" § 1692i(a)(1). In turn, § 1692i(a)(1) describes a legal action brought by a debt collector "to enforce an interest in real property securing the consumer's obligation." In that case, the debt collector may bring the action "only in a judicial district or similar legal entity in which such real property is located." *Id.* Because MTGLQ brought this action not only to collect personally against Wellington but also to enforce the mortgage, § 1692i(a)(1) required MTGLQ to bring it in New Mexico. *See Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 639 (7th Cir. 2014) (en banc) (explaining that "[i]f real estate is security for the loan, the suit must be brought where the property is located" pursuant to § 1692i(a)(1), and § 1692i(a)(2) does not apply where "the debt sued on is secured by real estate"). For this reason, we uphold the district court's denial of leave to file the proposed amended first counterclaim.

In counterclaims two, four, six, eight, nine, eleven, twelve, and thirteen, Wellington alleged violations of the FDCPA's prohibition on the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," § 1692e. But these counterclaims alleged various misrepresentations that, under the law of the case, were not misrepresentations at all: (1) allegations in MTGLQ's complaint concerning the authenticity of the Note and the mortgage attached to the complaint, the mortgage's assignment history,[12] MTGLQ's right to

---

[12] Neither the district court nor this panel has addressed whether MTGLQ's allegations regarding the mortgage's assignment history were inaccurate. But

20

payment on the Note, and the indorsements on the allonge; (2) allegedly "derogatory statements" Rushmore made to credit reporting agencies based on MTGLQ's "baseless" claims against her, Supp. R. at 75-76, ¶¶ 66, 68; (3) recording in the county clerk's office of a notice that this action was pending, which, Wellington alleged, was a false communication to the general public that MTGLQ had a "legitimate claim against Wellington and the property," *id.* at 76-77, ¶ 73; and (4) letters Rushmore sent claiming Wellington owed MTGLQ on the Note despite neither Rushmore nor MTGLQ having "any legitimate claim against Wellington," *id.* at 78, ¶ 78. Because the factual premise for these counterclaims fails, they are now moot, *see Miller ex rel. S.M.*, 565 F.3d at 1251, and we need not address the reasons the district court gave for denying leave to amend them.

Wellington's third counterclaim invoked § 1692f(1), which prohibits a debt collector from collecting or attempting to collect "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Wellington alleged that the complaint's request for taxes, assessments, insurance, and other expenses, plus 5.75% interest, violated § 1692f(1) because the Note does not provide for such amounts. The district court denied leave to file this proposed amended counterclaim because the Note expressly provided that the interest rate

---

because we have affirmed the district court's determination that the mortgage followed the Note, those allegations did not, as Wellington alleged in her ninth counterclaim, misrepresent "the character and legal status of the debt claim," Supp. R. at 74, ¶ 57.

21

before and after default was 5.75%, and that in the case of default, the holder could require Wellington to immediately pay outstanding principal and interest and could recover "costs and expenses in enforcing [the] Note," R. Vol. I at 28. Wellington argues only that the Note did not provide for collection of these amounts. That argument is frivolous; the Note expressly authorizes collection of those amounts.

In her fifth counterclaim, Wellington alleged that the law firm and its attorney falsely represented in the complaint that MTGLQ had notified Wellington of the default and demanded payment, in violation of § 1692e. The district court considered the amendment futile because the allegation was inconsistent with an allegation in Wellington's proposed amended thirteenth counterclaim that Rushmore contacted her on MTGLQ's behalf about default and mitigation options. Wellington essentially argues that she could plead in the alternative, but given the allegation in the thirteenth counterclaim, the allegations of the fifth counterclaim were not entitled to any presumption of truth. Therefore, the district court did not abuse its discretion in denying leave to file this counterclaim.

Wellington's seventh counterclaim alleged violations of § 1692e and § 1692g(b) against the law firm and its attorney. Section 1692g(a)(3) requires a debt collector to send a consumer notice that she has 30 days to dispute the debt. If the consumer contests the debt in writing within the 30-day period, § 1692g(b) requires the debt collector to cease collection until it sends verification of the debt to the consumer. Wellington alleged that a notice attached to the complaint violated § 1692g(b) and was a § 1692e misrepresentation because the notice informed

22

Wellington that although she had 30 days to dispute the validity of MTGLQ's debt claim, collections efforts could commence immediately. The district court considered the amended counterclaim futile because Wellington did not allege that she attempted to obtain verification of the debt or that defendants failed to provide verification or to cease collection until providing verification. Wellington argues that whether she requested verification is immaterial to whether there was a misrepresentation. We disagree. By its plain terms, § 1692g(b) requires only that a debt collector cease collection efforts after a consumer makes a timely request for verification. *See* § 1692g(b) ("Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor."). The proposed amendment of this counterclaim was not only futile, it was frivolous.

In her tenth counterclaim, Wellington alleged a violation of § 1692e based on the fact that MTGLQ named her "unknown spouse" as a defendant and served him with a summons. She claimed this "caused consternation and marital discord between Wellington and her husband," Supp. R. at 75, ¶ 61, because the property was always Wellington's separate property under California law, and the law firm and its attorney knew this or should have known this. The district court denied leave to file this counterclaim because Wellington lacked standing to sue on her spouse's behalf. Wellington argues that the court erred because she alleged that she sustained

23

damages from this alleged misrepresentation. Even so, we think this counterclaim fails for a more fundamental reason. In naming the spouse, MTGLQ alleged that he "may claim an interest in the subject Property by reason of Marriage." R. Vol. I at 24. It was not a misrepresentation to allege that Wellington's spouse *might* claim an interest in the property by virtue of the marriage regardless of whether he could do so successfully. Lacking a misrepresentation, allowing amendment of this counterclaim would have been futile.

Finally, Wellington faults the district court for not explaining why further amendment would be futile because she could have easily corrected any deficiencies in her proposed second amended complaint. However, the requirement to explain why further amendment would be futile applies where a district court dismisses a pro se litigant's complaint for failure to state a claim. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."). Here, the district court did not dismiss Wellington's proposed second amended complaint but only denied her leave to file it, and nothing in the district court's order suggests that Wellington could not try again. Accordingly, the court was not required to explain why further amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, we affirm in all respects.

Entered for the Court


Carolyn B. McHugh
Circuit Judge